CHERYL GORMBARD *v.* ZURICH
INSURANCE COMPANY
(SC 17443)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued January 5—officially released September 12, 2006

*Harold L. Rosnick*, for the appellant (plaintiff).

*Michael P. Del Sole*, for the appellee (defendant).

*Opinion*

PALMER, J. This appeal requires us to determine whether an insurance carrier that issues a reduced premium, specialty automobile liability insurance policy on an antique automobile that is used only for activities

such as exhibitions and parades lawfully may limit uninsured and underinsured motorist coverage under that specialty policy to accidents involving the occupancy or use of the antique automobile. The plaintiff, Cheryl Gormbard, and her husband, William Gormbard, purchased such a policy from the defendant, Zurich Insurance Company (Zurich), insuring their 1929 Ford Model A (Model A). Thereafter, the plaintiff sustained injuries when the 1987 Chevrolet Blazer (Blazer) that she was operating was struck by an underinsured motorist. The plaintiff sought to invoke the uninsured motorist provisions of the specialty policy issued by Zurich, claiming that the provisions of that policy purporting to limit uninsured and underinsured motorist coverage to accidents involving the Model A are unenforceable as against the public policy articulated in General Statutes (Rev. to 1993) § 38a-336 (a) (1).[1] After Zurich denied coverage, an arbitration panel rendered a decision for Zurich, concluding that those provisions do not violate

---

[1] General Statutes (Rev. to 1993) § 38a-336 provides in relevant part: "(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. . . ."

All references to § 38a-336 in this opinion are to the 1993 revision.

public policy and are, therefore, enforceable. The plaintiff filed an application to vacate, correct or modify the arbitration decision, and, thereafter, the trial court rendered judgment denying the plaintiff's application. On appeal,[2] the plaintiff raises the same public policy claim that she raised before the arbitration panel and in the trial court. We reject the plaintiff's claim and, therefore, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On July 8, 1993, the plaintiff was injured when the Blazer that she was operating was struck from behind by an automobile operated by Shirley LaMarco. The Blazer was one of three vehicles insured under an automobile liability insurance policy that had been issued to the plaintiff's husband by Liberty Mutual Insurance Company (Liberty Mutual). Although the policy provided liability coverage of $500,000, the plaintiff's husband had elected to reduce the limits of uninsured motorist coverage under the policy to the statutory minimum of $20,000 per individual and $40,000 per accident.[3] Liberty Mutual charged a total annual premium of $2241 for the policy.[4]

At the time of the accident, the plaintiff and her husband also owned the Model A that was insured under an "Antique and Classic Auto Policy" issued by Zurich. Pursuant to the liability section of that policy, Zurich agreed to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident involving 'your cov-

---

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] See General Statutes § 14-112 (a) and General Statutes (Rev. to 1993) § 38a-336 (a) (2).

[4] Under the policy issued by Liberty Mutual, the portion of the premium allocated to uninsured motorist coverage was $136, which represented an average cost of approximately $45 per vehicle for such coverage.

ered auto.'" "Insured" is defined under the policy as "[y]ou or any 'family member' for the ownership, maintenance or use of 'your covered auto.'" The term "your covered auto" is defined in relevant part as "any 'antique vehicle' or 'classic vehicle' shown in the [d]eclarations. . . ." In turn, "antique vehicle" is defined as "a motor vehicle twenty-five years or more of age, that is maintained solely for use in exhibitions, club activities, parades or other functions of public interest: it is not used primarily for the transportation of persons or goods." The policy issued by Zurich further provided: "We do not provide liability coverage for any person arising out of the ownership, maintenance or use of any vehicle other than 'your covered auto.'"

Pursuant to the terms of the uninsured motorist coverage section of the policy, Zurich also agreed to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' . . . [s]ustained by an 'insured' while 'occupying' 'your covered auto' . . . ." "Insured," as used in the uninsured motorist coverage section of the policy, is defined in relevant part as "[y]ou or any 'family member' while 'occupying' 'your covered auto.' . . ." Zurich charged a total annual premium of $75 for the policy, which provided liability and uninsured motorist coverage in the amount of $500,000. The charge for the $500,000 of uninsured motorist coverage was $14.

After the accident, the plaintiff settled her personal injury claim against LaMarco for $40,000, thereby exhausting the limits of LaMarco's liability insurance coverage. The plaintiff then filed a claim for underinsured motorist coverage under the policy issued by Zurich. Zurich denied the plaintiff's claim, asserting that, because the plaintiff was not occupying the Model A at the time of the accident, she was not covered under the policy. The parties' dispute thereafter was

submitted to a panel of three arbitrators in accordance with the compulsory arbitration provisions of the policy issued by Zurich. By a vote of two to one, the panel agreed with Zurich that the plaintiff was not covered under Zurich's policy while driving the Blazer. The panel explained that, contrary to the plaintiff's contention, "[t]he only requirement" under Connecticut law with respect to uninsured and underinsured motorist benefits "is that the 'class of insureds' for uninsured/underinsured motorist benefits be at least coextensive with the 'class of insureds' for liability purposes." The panel then concluded that, because the policy issued by Zurich limited liability coverage to accidents involving the Model A, it did not violate public policy for Zurich to limit uninsured and underinsured motorist coverage to accidents involving the Model A.

The plaintiff subsequently filed an application to vacate, correct or modify the arbitration panel's decision, and Zurich filed a motion to confirm. The trial court granted Zurich's motion to confirm and denied the plaintiff's application to vacate, correct or modify, concluding, inter alia, that, "[i]n limiting its antique car coverage only to accidents involving the antique car, Zurich violated no Connecticut statute or regulation. . . . [Because] the plaintiff could not have invoked the Zurich liability coverage for an accident involving the . . . Blazer, she [could not have] invoke[d] the policy's uninsured/underinsured coverage for the . . . Blazer accident."

On appeal, the plaintiff claims that the trial court incorrectly concluded that Zurich lawfully was entitled to limit uninsured and underinsured motorist coverage under its policy to circumstances in which the plaintiff was injured while occupying the Model A. The plaintiff maintains that, contrary to the conclusions of the arbitration panel and the trial court, this case is controlled by *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245,

449 A.2d 157 (1982), in which we held that, because "[u]ninsured motorist protection is coverage for persons, not for vehicles"; id., 250; "[u]ninsured motorist statutes place no geographical limits on coverage and do not purport to tie protection against uninsured motorists to occupancy of an insured vehicle." Id. In other words, uninsured motorist benefits must be fully portable, protecting the insured no matter how or where he or she is injured by an uninsured motorist, in order to fulfill the broad, remedial purpose of the uninsured motorist statute. See id., 250–51. The plaintiff maintains that any exclusion or definitional limitation in an automobile insurance policy that purports to circumvent that statutory purpose is unenforceable as against public policy.

Zurich counters that this case is controlled by *Middlesex Ins. Co.* v. *Quinn*, 225 Conn. 257, 622 A.2d 572 (1993), in which we upheld a provision in an automobile liability insurance policy that excluded from the definition of "insured"—for both liability and uninsured motorist coverage purposes—relatives who reside with the named insured and who own their own vehicles. Id., 261–62, 265. Zurich contends that, under *Quinn*, an insurer may limit uninsured motorist coverage to accidents involving a covered vehicle as long as uninsured motorist coverage is at least coextensive with liability coverage. Specifically, Zurich maintains that this court made it clear in *Quinn* that Connecticut law requires only that those individuals insured under the liability provisions of an automobile insurance policy also must be afforded uninsured motorist coverage, and that, because an insurer lawfully may tie *liability* coverage to the use of a specific vehicle, uninsured motorist coverage can be limited in the same manner. Zurich further maintains that this court should follow those jurisdictions that have considered the issue raised by this appeal and permit the tying of uninsured motor-

ist coverage to the use of the covered vehicle when, as in the present case, that vehicle is an antique vehicle used only for activities such as exhibitions and parades and not for general transportation purposes.

As we explain more fully hereinafter, we agree with the plaintiff that our explication in *Harvey* of the public policy underlying § 38a-336 remains sound, and that, as a general matter, an insurer lawfully cannot tie uninsured motorist benefits to the use of a specific vehicle. Moreover, we disagree with Zurich that our holding in *Quinn* is inconsistent with our conclusion in *Harvey* concerning the public policy reflected in § 38a-336; indeed, *Quinn* has no bearing on the outcome of the present case. Nevertheless, we are not persuaded that the public policy embodied in our uninsured motorist statute extends to the specialty policy that the plaintiff and her husband purchased from Zurich to insure their Model A. Consequently, we conclude that the uninsured motorist provisions of that policy are enforceable, and, therefore, the plaintiff is not entitled to underinsured motorist benefits under the policy issued by Zurich.[5]

We begin our analysis by noting that " '[t]he standard of review for arbitration awards is determined by whether the arbitration was compulsory or voluntary. This court recognized the fundamental differences between voluntary and compulsory arbitration in *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 190–91, 530 A.2d 171 (1987). The court concluded therein that "[when] judicial review of compulsory arbi-

---

[5] We note that both the arbitration panel and the trial court relied on *Quinn* in support of their determination that the uninsured motorist provisions of the policy issued by Zurich are enforceable. Although we reach the same ultimate conclusion as the arbitration panel and the trial court, namely, that the plaintiff is not entitled to underinsured motorist benefits under the policy issued by Zurich, in light of our conclusion that *Quinn* is inapposite to the present case, we reject the reasoning of the arbitration panel and the trial court to the extent that that reasoning is predicated on *Quinn*.

tration proceedings required by [§ 38a-336 (c)] is undertaken . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators. The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings." Id., 191. A reviewing court therefore must conduct a de novo review of the arbitrators' decision on coverage issues because such issues are subject to compulsory arbitration.' " *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 404 n.5, 891 A.2d 959 (2006). Because the issue in the present case involves one of coverage, and because the arbitration was compulsory, our review is de novo.

We now turn to the merits of the plaintiff's claim. Our point of departure is § 38a-336, our uninsured motorist statute. "Prior to 1967, when the legislature enacted General Statutes § 38-175c, which is now codified at § 38a-336, uninsured motorist coverage, although available, was not required, and coverage was limited to the amount requested by the insured. E.g., *Piersa* v. *Phoenix Ins. Co.*, 273 Conn. 519, 537, 871 A.2d 992 (2005). In 1967, the legislature required insurers to provide uninsured motorist coverage with minimum limits of coverage specified by statute. Public Acts 1967, No. 510, § 4, codified at General Statutes (Cum. Sup. 1967) § 38-175c." *Kinsey* v. *Pacific Employers Ins. Co.*, supra, 277 Conn. 408. General Statutes (Rev. to 1993) § 38a-336 (a) (1) requires every automobile liability insurance policy to include uninsured and underinsured motorist coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles . . . ." "The accompanying regulation, [§ 38a-334-6 (a)] of the Regulations of Connecticut State Agencies, accordingly provides: 'The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to

recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured [or underinsured] motor vehicle.'" *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 377, 593 A.2d 498 (1991).

We have stated that "[t]his regulatory pattern establishes the public policy that 'every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Insurance companies are powerless to restrict the broad coverage mandated by the statute.' *Harvey* v. *Travelers Indemnity Co.*, [supra, 188 Conn. 249]." *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, 219 Conn. 377. "The obligation of [an] insurance carrier providing uninsured motorist coverage as a part of its liability insurance coverage on the automobile of the insured person is a contractual obligation arising under the policy of insurance. . . . Payments made pursuant to an uninsured motorist policy are paid on behalf of the insured, and not on behalf of the financially irresponsible motorist who has caused the insured's injuries." (Internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 48, 699 A.2d 964 (1997). "To implement [the public policy embodied in the uninsured motorist statute], we have held repeatedly that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as [§ 38a-334-6] of the Regulations of Connecticut State Agencies expressly authorizes." (Internal quotation marks omitted.) *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, 377.

In *Harvey* v. *Travelers Indemnity Co.*, supra, 188 Conn. 245, we were called upon to decide whether the uninsured motorist coverage mandated by what is now § 38a-336 is person oriented protection, such that an insurer is required to provide uninsured motorist cover-

age for the protection of its insured no matter what vehicle the insured was operating or occupying at the time of the accident,[6] or vehicle oriented protection, such that an insurer is permitted to tie uninsured motorist coverage to the use or occupancy of the particular vehicle covered under the policy. Id., 248. In *Harvey*, the plaintiff, Gregory H. Harvey, was injured by an uninsured motorist while riding an uninsured motorcycle belonging to his father. Id., 245–46. Harvey sought benefits under the uninsured motorist provisions of an automobile liability insurance policy that Harvey's mother had purchased from Travelers Indemnity Company (Travelers) for a car that she owned.[7] Id., 246. Travelers disclaimed liability on the basis of an exclusion in the policy that provided in relevant part: "This policy does not apply . . . to bodily injury to an insured while occupying a highway vehicle (other than an insured automobile) owned by the named insured or a relative . . . ." (Internal quotation marks omitted.) Id. Harvey thereafter brought a declaratory judgment action to determine the validity of the exclusion, and the trial court rendered judgment in his favor. Id.

On appeal to this court, Travelers argued that the uninsured motorist statute and its implementing regulations required uninsured motorist coverage "only when [the insureds] are occupants of [the] motor vehicle to which the bodily injury liability coverage applies." Id., 248. Harvey, on the other hand, maintained that the statute and, in particular, the public policy embodied therein mandated that uninsured motorist coverage applied to the person, not the vehicle. Id., 247–48. In addressing the parties' respective claims, we framed

---

[6] Of course, if the uninsured motorist coverage mandated by § 38a-336 is person oriented coverage, then the insured also is entitled to such coverage even if he or she was a pedestrian at the time of accident.

[7] It was undisputed that Harvey was an "insured" under his mother's insurance policy. *Harvey* v. *Travelers Indemnity Co.*, supra, 188 Conn. 246.

the issue as whether the policy exclusion on which Travelers had relied in denying coverage was "valid because the required uninsured motorist coverage is 'vehicle oriented,' or void because the required uninsured motorist coverage is 'person oriented.' " Id., 248. In concluding that the exclusion was void because the required coverage is person oriented, we explained: "Our uninsured motorist insurance statute . . . provides coverage for *persons* insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . . The coverage attaches to the insured person, not the insured vehicle. Thus, this court has held that an injured party may receive the benefits of a policy even though [he was] not occupying a vehicle insured under that policy. *Citrano* v. *Berkshire Mutual Ins. Co.*, 171 Conn. 248, 254, 368 A.2d 54 (1976); *Testone* v. *Allstate Ins. Co.*, 165 Conn. 126, 134–35, 328 A.2d 686 (1973)." (Emphasis in original; internal quotation marks omitted.) *Harvey* v. *Travelers Indemnity Co.*, supra, 188 Conn. 248.

We further explained that, "[a]lthough the issue before us [was] one of first impression . . . it ha[d] received much attention in the courts of other jurisdictions. The position of the courts of a majority of those jurisdictions is that the exclusion is void as contrary to the public policy expressed in statutes requiring the uninsured motorist coverage. The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Insurance companies are powerless to restrict the broad coverage mandated by the statute. *Standard Accident Ins. Co.* v. *Gavin*, 184 So. 2d 229, 232 ([Fla. App.] 1966). [U]ninsured motorist coverage . . . is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed

by the Financial Responsibility Law . . . . To achieve this purpose, no policy exclusions contrary to the statute of any of the class of family insureds are permissible since uninsured motorist coverage is intended by the statute to be uniform and standard motor vehicle accident liability insurance for the protection of such insureds thereunder as if the uninsured motorist had carried the minimum limits of an automobile liability policy. *Mullis* v. *State Farm Mutual Automobile Ins. Co.*, 252 So. 2d 229, 237–38 (Fla. 1971). The public policy embodied in these statutes favors indemnification of accident victims unless they are responsible for the accident. [A.] Widiss, A Guide to Uninsured Motorist Coverage (1969) § 2.9, p. 29.

"An insured's status at the time of the injury, whether passenger, pedestrian, or driver of an insured or uninsured vehicle, is irrelevant to recovery under the statutorily mandated coverage. See *Elledge* v. *Warren*, 263 So. 2d 912, 918–19 (La. App. 1972); *Employers' Fire Ins. Co.* v. *Baker*, [119 R.I. 734, 746–47, 383 A.2d 1005 (1978)] (Kelleher, J., dissenting [in part]). The coverage is portable: The insured and family members . . . are insured no matter where they are injured."[8] (Internal

---

[8] We note that, following our decision in *Harvey*, and in direct response to it, the legislature passed Public Acts 1983, No. 83-461, which amended the uninsured motorist statute to provide: "No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured." During the legislative debate on the amendment, Senator Wayne A. Baker explained that the amendment was intended to overrule this court's holding in *Harvey* that public policy requires an insurer to provide uninsured motorist coverage for injuries that an insured sustains while occupying an uninsured vehicle that the insured, or a family member of the insured, owns. Specifically, Senator Baker stated: "[*Harvey*] requires insur[ers] to provide coverage to people who choose to break this state's compulsory insurance law. If a person does drive without insurance and exposes others to injury without the protection of liability coverage, then that person should not be entitled to uninsured motorist coverage. This bill then would deny uninsured

quotation marks omitted.) *Harvey* v. *Travelers Indemnity Co.*, supra, 188 Conn. 249–50.

Zurich maintains, however, and the arbitration panel and trial court agreed,[9] that the public policy analysis that we employed in *Harvey* has little, if any, vitality following our decision in *Quinn*, which, Zurich argues, holds that vehicle oriented uninsured motorist coverage is permissible when, as in the present case, the liability coverage also is vehicle oriented. We disagree that *Quinn* stands for such a proposition. In *Quinn*, we did not rule on the propriety of vehicle oriented uninsured motorist coverage, and, thus, we did not revisit our holding in *Harvey*, because the insurance policy at issue in *Quinn* did not limit uninsured motorist coverage in any impermissible way. See *Middlesex Ins. Co.* v. *Quinn*, supra, 225 Conn. 264–65. The sole issue in *Quinn* was whether public policy imposes on an insurer a duty to provide liability and underinsured motorist coverage to the relatives of a named insured who reside in the insured's household but who own their own vehicles. See id., 260–62.

The defendant in *Quinn*, James J. Quinn III, while driving his own underinsured vehicle, was injured when he was struck by an underinsured motorist. See id., 259. After exhausting the liability limits of the underinsured motorist's insurance policy, Quinn, who resided with his father, sought underinsured motorist coverage from the plaintiff, Middlesex Insurance Company (Middlesex), the insurer of several vehicles owned by Quinn's father. Id. Middlesex denied the claim on the ground

motorist coverage to such people." 26 S. Proc., Pt. 9, 1983 Sess., p. 3055. There is nothing in the language of the 1983 amendment or in the relevant legislative history, however, to indicate that the legislature disagreed with our determination in *Harvey* that, as a general matter, uninsured motorist benefits must be portable if they are to fulfill the broad remedial purpose of the statute.

[9] See footnote 5 of this opinion.

that Quinn was not an insured under his father's policy; id.; which defined insured as "a member of the family who is a resident of the household and who [does not] own a car . . . ." (Internal quotation marks omitted.) Id., 262. The dispute proceeded to arbitration, and the arbitration panel concluded that the definition of insured in the father's policy violated § 38a-336. Id., 260. In accordance with its conclusion, the panel awarded Quinn $83,333 in underinsured motorist benefits under the Middlesex policy. Id. Thereafter, the trial court rendered judgment vacating the award, and the Appellate Court affirmed the judgment of the trial court. Id.

On appeal to this court, Quinn argued that the public policy underlying the uninsured motorist statute "precludes an automobile insurer from excluding from underinsured motorist coverage a resident family member who owns a car . . . ." Id. Quinn's argument, we explained, was "based [on] the principle of public policy that an insurer may not reduce its liability for underinsured motorist coverage by contract except to the extent that the relevant regulations expressly authorize." Id., 261, citing *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 156, 617 A.2d 454 (1992). We rejected this argument, however, simply because Quinn, a resident relative who owned his own car, was not an insured under the unambiguous language of his father's insurance policy, and, therefore, the public policy that precludes an insurer from contractually reducing its liability for underinsured motorist coverage was not implicated. See *Middlesex Ins. Co.* v. *Quinn*, supra, 225 Conn. 262.

We next addressed Quinn's contention that the definition of "insured" under the policy was *itself* a violation of public policy. Id. In rejecting this second contention, we explained that, "[u]nlike the automobile liability statutes, the uninsured motorist statute does not require automobile insurance policies to provide underinsured

motorist benefits to any particular class or group of insureds. . . . [Nor does it] specifically define 'insured' in the context of underinsured motorist coverage. Rather, the statute requires that underinsured motorist coverage must be provided 'for the protection of persons *insured thereunder.*' . . . General Statutes [(Rev. to 1993)] § 38a-336 (a) (1). Thus, 'persons insured' in this statute refers to persons specified as insureds in the liability portion of the policy. There would be no violation of public policy, therefore, unless the insurance policy specifically were to limit underinsured motorist coverage in such a way as 'to [preclude] persons who would otherwise qualify as insureds for liability purposes.' *Indiana Lumbermens Mutual Ins. Co.* v. *Vincel,* [452 N.E.2d 418, 424 (Ind. App. 1983)]." (Citation omitted; emphasis in original.) *Middlesex Ins. Co.* v. *Quinn,* supra, 225 Conn. 264–65.

Contrary to Zurich's contention, this language in *Quinn* was not intended to suggest that an insurer may circumvent the public policy that we identified in *Harvey* by defining an insured, under the liability section of the policy, in relationship to the covered automobile. On the contrary, we explicitly stated that "[a]n insurer cannot limit otherwise mandated underinsured motorist coverage by labeling a forbidden exclusion as a definition." Id., 268. We can think of no better example of an attempt to limit otherwise mandated uninsured motorist coverage than a definition in an insurance policy that purports to limit uninsured motorist coverage to injuries arising out of the insured's use of a specified vehicle. As we have explained, however, in *Quinn,* the automobile liability insurance policy at issue did not limit uninsured motorist benefits in any impermissible way with respect to any of the class of insureds; as to *them,* the coverage was fully portable. The only issue in *Quinn* was whether Middlesex lawfully could refuse to extend coverage to resident family members

who owned their own vehicles. We concluded not only that Middlesex could deny coverage to such family members, but also that doing so *furthered* the important public policy goals of the uninsured motorist statute. Specifically, we explained: "Section 38a-336 states that uninsured motorist coverage must be provided in every automobile liability policy for the protection of persons insured thereunder. The policy behind linking uninsured motorist coverage to liability coverage is to reward those who obtain insurance coverage for the benefit of those they might injure. Persons who are uninsured for purposes of liability coverage should not be protected by the public policy of this state from their own kind. . . .

"The owner of an automobile is expected and required to obtain his or her own automobile insurance. General Statutes § 14-12b (a) (1). . . . [A]lthough [Quinn] had insurance on his car, he elected to purchase only the minimum amount of coverage. Obviously, [Middlesex] . . . did not intend to contract with [Quinn's] father to provide liability coverage on automobiles in the [Quinn] household for which no premium had been paid, and the company unambiguously has made that intent part of the insurance contract. . . . In the absence of clear direction from the legislature, [w]e decline to extend the public policy . . . to allow a member of a family to purchase one liability policy and claim total coverage thereunder for the entire family while vastly increasing the risk to his or her insurer by knowingly owning and operating a fleet of uninsured [or underinsured] vehicles upon the highways. . . . [Quinn] is limited to the coverage he purchased on his own automobile."[10] (Citations omitted; internal quota-

---

[10] We note that, soon after the issuance of our opinion in *Quinn*, the legislature passed Public Acts 1993, No. 93-297, § 1, which, among other things, incorporated into the uninsured and underinsured motorist statute our holding in *Quinn* that the occupant of an owned vehicle, who is injured by an uninsured or underinsured motorist while driving his or her owned vehicle, is limited to the uninsured and underinsured motorist coverage that

tion marks omitted.) *Middlesex Ins. Co.* v. *Quinn,* supra, 225 Conn. 268–69.

Returning to the specialty automobile insurance policy issued by Zurich to the plaintiff, it would appear, at least facially, that the policy violates the prohibition articulated in *Harvey* and *Quinn* because it purports to limit uninsured motorist benefits to accidents involving the plaintiff's Model A. Indeed, in *St. Paul Mercury Ins. Co.* v. *Zastrow,* 166 Wis. 2d 423, 437, 480 N.W.2d 8 (1992), a case on which the plaintiff relies, the Supreme Court of Wisconsin declined to enforce an identical limitation in an antique automobile insurance policy precisely for this reason. The Supreme Court of Wisconsin stated that, "[i]f [vehicle oriented] uninsured motorist coverage is to be permissible for antique or collector cars or any other special or limited use vehicles, the legislature must provide it."[11] Id.; see also *State Farm Mutual Automobile Ins. Co.* v. *Zurich Ins. Co.,* 439 N.W.2d 751, 754 (Minn. App. 1989).

Zurich, however, urges us to follow those courts that have enforced the limitation at issue despite the existence of a public policy generally prohibiting vehicle oriented uninsured motorist coverage, in the narrow context of specialty liability insurance policies covering

the occupant had purchased for the owned vehicle. See Public Acts 1993, No. 93-297, § 1 ("[i]f any person insured for uninsured and underinsured motorist coverage is an occupant of an owned vehicle, the uninsured and underinsured motorist coverage afforded by the policy covering the vehicle occupied at the time of the accident shall be the only uninsured and underinsured motorist coverage available").

We further note that Public Act 93-297, § 1, did not become effective until January 1, 1994, approximately six months after the date of the accident that gave rise to the plaintiff's claim in the present case. If the plaintiff's accident had occurred after the effective date of that amendment, the plaintiff clearly would have been limited to the uninsured motorist coverage that she and her husband had purchased for the Blazer.

[11] *Zastrow* subsequently was legislatively overruled by the Wisconsin legislature. See Wis. Stat. Ann. § 632.32 (5) (f), (g) and (j) (West 2004); see also *Blazekovic* v. *Milwaukee,* 234 Wis. 2d 587, 600–601, 610 N.W.2d 467 (2000).

antique vehicles. See, e.g., *St. Paul Mercury Ins. Co.* v. *Perry*, 227 F. Sup. 2d 430, 435, 439 (E.D. Pa. 2002); *Martin* v. *St. Paul Fire & Marine Ins. Co.*, 670 So. 2d 997, 998, 1001 (Fla. App.), review denied, 682 So. 2d 1100 (Fla. 1996); *Metlife Auto & Home* v. *Palmer*, 365 N.J. Super. 293, 295, 301–303, 839 A.2d 83 (App. Div. 2004); *St. Paul Mercury Ins. Co.* v. *Corbett*, 428 Pa. Super. 54, 59, 65, 630 A.2d 28, appeal dismissed, 535 Pa. 658, 634 A.2d 221 (1993). These courts have enforced the limitation for several reasons, in particular, the special nature of limited use antique vehicles, the reasonable expectations of the parties and the substantially reduced premium that an insured pays to insure limited use antique vehicles. For example, in *St. Paul Mercury Ins. Co.* v. *Corbett*, supra, 56, a case factually similar to the present case, the defendant, Scott J. Corbett, was struck by a hit and run driver while driving to work in a vehicle owned and insured by his employer. After recovering uninsured motorist benefits under his employer's automobile liability insurance policy, Corbett sought coverage under three other policies, one of which was a specialty policy that Corbett had purchased from St. Paul Mercury Insurance Company (St. Paul), under which his 1952 Singer Roadster was insured. Id., 57. St. Paul filed a declaratory judgment action, claiming that it was not obligated to provide uninsured motorist benefits to Corbett because its specialty policy provided coverage only for injuries sustained while the insured was operating the Roadster. Id. The trial court rejected St. Paul's claim, concluding that Corbett was entitled to uninsured motorist benefits under the specialty policy, and St. Paul appealed from the judgment of the trial court to the Pennsylvania Superior Court. Id.

In concluding that the limited coverage provided under the policy did not violate Pennsylvania's uninsured motorist statute, the Pennsylvania Superior Court focused on the reasonable expectations of the parties.

See id., 59–62. The court observed that, under the plain terms of the policy, Corbett's injuries would not have been covered even if he had been driving the Roadster at the time of the accident because the policy expressly excluded from coverage accidents arising from "regular auto[mobile] usage," such as "driving to and from work . . . ." (Internal quotation marks omitted.) Id., 60. The court also stressed the unfairness of requiring St. Paul to pay benefits to Corbett when Corbett had been charged a substantially reduced premium for the policy.[12] Id., 62. Finally, the Pennsylvania Superior Court expressed concern that invalidating the policy limitation would lead to significant increases in the premiums that insurers would charge for antique automobile insurance policies. Id., 63–64. "The very limited use of antique automobiles does not subject them to the normal exposure or danger from uninsured motorists. These vehicles are seldom driven on highways for fear of wear and tear or breakdown. In fact, owners of antique automobiles often have their antique cars transported on flatbed trucks. Because of the decreased risks associated with antique vehicles, premiums for these special insurance policies are lower than those for personal automobile policies. To invalidate the restrictions found in the policy would force insurance companies to raise rates on antique automobile policies to account for the attendant increased risks. If coverage is permitted under the circumstances presented . . . the distinctions between antique automobile insurance and other types of insurance will be eradicated and premiums for antique vehicle insurance will be on par with personal automobile insurance. This result was not con-

---

[12] The court explained that, under the specialty policy, St. Paul had charged Corbett a mere $6 for $50,000 worth of uninsured motorist benefits. *St. Paul Mercury Ins. Co.* v. *Corbett,* supra, 428 Pa. Super. 62. The court also noted that, by contrast, the cost of uninsured motorist coverage provided under policies covering personal or regular vehicles was approximately $102 for $300,000 worth of uninsured motorist coverage. Id.

templated by the [l]egislature in enacting the [statutory scheme governing uninsured motorist coverage in Pennsylvania]." Id.

In *Martin* v. *St. Paul Fire & Marine Ins. Co.*, supra, 670 So. 2d 998, 1001, the Florida District Court of Appeals reached the same result. In *Martin*, the court concluded that, because the antique vehicle at issue could not be used for general transportation purposes under the plain language of the insurance contract, the public policy concerns underlying Florida's uninsured motorist statute were not threatened. See id., 1001. "The antique car insured in this case is a hobby, not a means of family transportation. Accordingly, we do not conclude that the legislative policies concerning uninsured motorist coverage are violated by the specialty policy [at issue] . . . ." Id. As the court explained, a contrary conclusion undoubtedly would lead to a substantial increase in the cost of such policies to antique car enthusiasts, a result not intended by the legislature. Id.

We agree with the reasoning of *Corbett* and *Martin*. As those courts observed, antique vehicles used only for such activities as parades and exhibitions are materially different from vehicles used for general transportation purposes. Because those antique vehicles are not used for transportation, it is perfectly reasonable for owners of such vehicles to seek to purchase insurance at a cost commensurate with their limited use; it is similarly reasonable for insurers to issue specialty policies covering antique vehicles for substantially reduced premiums. Indeed, that is precisely what occurred in the present case. Although § 38a-336 mandates that, as a general matter, uninsured motorist coverage shall be portable, that mandate, we believe, was intended to apply to ordinary, personal use vehicles, and not to antique vehicles "maintained solely for use in exhibitions, club activities, parades or other functions of public interest." In other words, for purposes of that

statutory mandate, we see no reason why the legislature would have intended to treat antique vehicles that are rarely, if ever, operated on our highways, in the same manner as vehicles maintained for regular highway travel. To conclude otherwise would defeat the reasonable expectations of the parties as reflected in the policy issued by Zurich, including the substantially reduced premium, and would result in a windfall recovery by the plaintiff.[13] We think it is highly unlikely that the legislature would have intended such a result.[14] We conclude, therefore, that the uninsured motorist provisions of the policy issued by Zurich do not contravene public policy and, consequently, are enforceable. Accordingly, the plaintiff is not entitled to underinsured motorist benefits under the policy issued by Zurich.[15]

---

[13] We note that the annual cost of the $500,000 worth of uninsured motorist coverage under Zurich's specialty policy insuring the plaintiff's Model A was $14. In contrast, the average annual per vehicle cost of $20,000 worth of uninsured motorist coverage obtained under the Liberty Mutual policy, which covered the couple's other three vehicles, was approximately $45. See footnote 4 of this opinion. Thus, although the plaintiff obtained twenty-five times more uninsured motorist coverage for the Model A than for each of her other three vehicles, the cost of that coverage was, on average, almost one-third less than the per vehicle cost of the uninsured motorist coverage under the policy issued by Liberty Mutual.

[14] The plaintiff contends that it is the prerogative of the legislature, and not this court, to recognize an exception to § 38a-336 that would allow insurers to limit uninsured motorist coverage on antique vehicles to persons using or occupying those vehicles. We disagree with the plaintiff's assertion. Because we are persuaded that the general policy set forth in § 38a-336 concerning the portability of uninsured motorist coverage does not apply to specialty automobile liability insurance policies covering limited use antique vehicles maintained solely for exhibitions, parades and the like, we are bound to construe § 38a-336 in a manner consistent with that determination.

[15] The plaintiff also claims that the policy issued by Zurich is ambiguous as to who is an insured for purposes of uninsured motorist coverage because of a "clear contradiction" between the definition of "insured" under the uninsured motorist provisions of the policy and the definition of "insured" under an exclusion contained in an endorsement to that policy applicable to policies issued for Connecticut vehicles. The plaintiff further contends that she is entitled to uninsured motorist benefits under the policy in light of this purported ambiguity. We disagree. It is well established that "an

The judgment is affirmed.

In this opinion the other justices concurred.

. . . ."

exclusion is a provision [in an insurance policy that] eliminates coverage where, were it not for the exclusion, *coverage would have existed.* . . . [T]he word exclusion signifies subject matter or circumstances in which the insurance company will not assume liability for a specific risk or hazard that otherwise would be included within the general scope of the policy. . . . It is apparent, then, that before the need for an exclusion arises, there must first be coverage within the defined scope of the policy." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 588–89, 573 A.2d 699 (1990). Because the policy issued by Zurich unambiguously limits uninsured motorist coverage to accidents involving the use of the Model A, the exclusion set forth in the Connecticut endorsement is of no aid to the plaintiff.