# WILLIAM LUDEMANN ET AL. *v.* SPECIALTY NATIONAL INSURANCE COMPANY

Superior Court, Judicial District of Hartford

File No. CV-07-4034248-S

Memorandum filed July 11, 2008*

*McEleney & McGrail, LLC*, for the plaintiffs.

*Frank J. Szilagyi*, for the defendant.

---

* Affirmed. *Ludemann* v. *Specialty National Ins. Co.*, 117 Conn. App. 656, 980 A.2d 343 (2009).

HON. ROBERT F. STENGEL, JUDGE TRIAL REFEREE.

I

The plaintiffs, William Ludemann and Laura Ennis (formerly known as Laura Ludemann), move to vacate an arbitration award dated November 13, 2007, in favor of the defendant, Specialty National Insurance Company (Specialty National), which is an insurer for the town of Enfield. The following facts are not in dispute. Ludemann, a police officer for Enfield, sustained injuries when he was struck by an underinsured motorist while directing traffic in the course of his employment. Ludemann filed for and received workers' compensation benefits from Enfield and also settled a claim with the motorist up to the limits of the motorist's automobile liability insurance policy.

Ludemann then proceeded to arbitration with Specialty National to determine whether he was entitled to compensation as an insured under the uninsured and underinsured motorist provision of Enfield's insurance policy (insurance policy). The two issues submitted to the arbitrators were as follows: "(1) Whether or not the [automobile] insurance policy issued by Specialty National . . . to . . . Enfield provides underinsured motorist benefits to William Ludemann as a consequence of personal injuries sustained by him in the automobile accident of April 16, 2001 in Enfield, Connecticut?; (2) Whether or not Laura Ennis, [formerly known as] Laura Ludemann, is entitled to recover for loss of consortium under the aforesaid policy . . . as a consequence of the same automobile accident . . . involving her then husband, William Ludemann?" The arbitration proceeded pursuant to General Statutes § 38a-336 (c) before a panel of three arbitrators. In a

two-to-one vote, the arbitrators determined that Ludemann was not entitled to underinsured motorist benefits, and, as a result, Ennis, his wife at the time of the injury, could not recover for loss of consortium.

Because Ludemann is seeking underinsured motorist coverage on top of workers' compensation benefits, the decision of the arbitrators, and this court, hinges on the relationship between General Statutes § 31-284 (a) of the Workers' Compensation Act; General Statutes § 31-275 et seq.; and § 38a-336 (f) of the uninsured and underinsured motorist statutes. Section 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee . . . but an employer shall secure compensation for his employees under this chapter . . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer from the injury or from enforcing any agreement for additional compensation."

Section 38a-336 (f) provides: "Notwithstanding subsection (a) of section 31-284, an employee of a named insured injured while occupying a covered motor vehicle in the course of employment shall be covered by such insured's otherwise applicable uninsured and underinsured motorist coverage."

The basic issue is whether Ludemann should be barred from receiving underinsured motorist benefits under the insurance policy because he was not "occupying" the motor vehicle for the purposes of § 38a-336 (f). The arbitrators concluded that Ludemann was not

"occupying a covered motor vehicle" for the purposes of § 38a-336 (f) and, therefore, was only entitled to workers' compensation benefits pursuant to § 31-284. The arbitrators based their decision mainly on the Appellate Court's decision in *Gomes* v. *Massachusetts Bay Ins. Co.*, 87 Conn. App. 416, 866 A.2d 704, cert. denied, 273 Conn. 925, 871 A.2d 1031 (2005). The *Gomes* court held, inter alia, that a volunteer fire policeman who was struck by an underinsured motorist while directing traffic in the middle of an intersection and away from his vehicle was not "occupying" a motor vehicle for the purposes of § 38a-336 (f). Id., 435–36.

Ludemann moves to vacate the arbitrators' award on a number of grounds, which can be grouped broadly into four general grounds. First, Ludemann claims that he is entitled to coverage as an "insured" pursuant to § 38a-336 (a) (1)[1] and that *Gomes* was wrongly decided. Second, he claims that the arbitrators' decision violates the public policy embodied in § 38a-336 (a) (1), which according to Ludemann, dictates that insureds are covered under uninsured and underinsured motorist policy provisions regardless of where they are located when they are hit. Third, Ludemann asserts that he has a right to underinsured motorist coverage as a third party beneficiary under the insurance contract and, therefore, falls under an exception in § 31-284 (a). Fourth, Ludemann argues that he was "occupying" his vehicle as the term is understood in § 38a-336 (f) and also on the basis of the definition of "occupying" in the insurance policy.

On February 25, 2008, Specialty National filed a memorandum of law in opposition to the plaintiffs' application to vacate the arbitration award. Specialty National

---

[1] General Statutes § 38a-336 (a) (1) provides in relevant part: "Each automobile liability insurance policy shall provide insurance . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of . . . underinsured motor vehicles . . . ."

argues that the Appellate Court's decision in *Gomes* is controlling, and, therefore, the arbitrators' decision should be upheld. Specialty National also contends, inter alia, that the arbitrators' award does not violate public policy and disputes the claim that any exception under § 31-284 (a) would apply to Ludemann.

## II

"[T]he standard of review for arbitration awards is determined by whether the arbitration was compulsory or voluntary. . . . [When] judicial review of compulsory arbitration proceedings required by [§ 38a-336 (c)] is undertaken . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators. The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings. . . . Because the issue in the present case involves one of coverage, and because the arbitration was compulsory, [the] review is de novo." (Citations omitted; internal quotation marks omitted.) *Gormbard* v. *Zurich Ins. Co.*, 279 Conn. 808, 815–16, 904 A.2d 198 (2006).

In addition to claiming coverage under the insurance policy, the plaintiffs also contest the arbitrators' decision on the ground of public policy. "An arbitrator's award may be vacated if it violates clear public policy." *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 655, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). "This rule is an exception to the general rule restricting judicial review of arbitral awards. . . . The exception, however, is narrowly construed and . . . is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant . . . . To be vacated under the narrow public policy exception, the award must be

clearly illegal or clearly violative of a strong public policy. . . . Furthermore, [t]he party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Citations omitted; internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 93–94, 919 A.2d 1002 (2007).

## III

Ludemann's four grounds for vacating the arbitrators' decision are efforts to argue that notwithstanding the Appellate Court's opinion in *Gomes*, he is entitled to coverage as an "insured" under the insurance policy and that he was "occupying" his motor vehicle at the time of the injury. Upon de novo review, this court disagrees.

*Gomes* is both factually and legally controlling. In *Gomes*, the plaintiff was a volunteer fire policeman who was directing traffic in the middle of an intersection when he was struck by an underinsured motorist. *Gomes* v. *Massachusetts Bay Ins. Co.*, supra, 87 Conn. App. 418–19. At the time of the accident, the plaintiff was away from his patrol car, which was parked near the intersection. Id., 418. In addition to receiving workers' compensation benefits, the plaintiff sought additional compensation under the uninsured and underinsured motorist provision of the fire district's insurance policy. Id., 419.

The trial court in *Gomes* rendered summary judgment in favor of the defendant insurance company on the ground that the plaintiff was not "occupying" a motor vehicle for the purposes of § 38a-336 (f) and, thus, was limited to his workers' compensation remedy due to the exclusivity provision in § 31-284 (a). Id., 420. In interpreting the term "occupying" in the statute, the trial court relied on the insurance policy, which defined "occupying" as "in, upon, getting in, on, out or off."

(Internal quotation marks omitted.) Id. The trial court held that the plaintiff was not occupying the vehicle because he was standing in an intersection away from his vehicle. Id.

On appeal, the Appellate Court affirmed the trial court's decision, but not on the basis of the definition of "occupying" in the insurance policy. Id., 432. Instead, the Appellate Court interpreted the term "occupying" in § 38a-336 (f) on the basis of dictionary definitions, definitions of the term in similar statutes, the interpretation by courts of similar terms in insurance policies and the underlying purpose of the statute. Id., 433–35. The court concluded that "occupying" required the driver to have "physical contact" with the vehicle to qualify for uninsured and underinsured motorist coverage. Id., 435–36.

In the present case, as in *Gomes*, Ludemann was standing away from his vehicle in the middle of an intersection. As a result, he was not "occupying" his vehicle for the purposes of § 38a-336 (f) and is therefore limited to his workers' compensation remedy by the exclusivity provision in § 31-284.

IV

Ludemann's challenges to the arbitrators' decision are unpersuasive. His first argument is that he is entitled to coverage as an "insured" under § 38a-336 (a) (1) for reasons that were not adjudicated in *Gomes*. The thrust of the argument is that the legislature, when it enacted § 38a-336 (f), only intended the subsection to apply to "occupants" of vehicles, not "insureds." The argument has three parts: (1) "insureds" have always had protection under § 38a-336 (a) (1) regardless of their proximity to the covered motor vehicle; (2) § 38a-336 (f) does not apply to "insureds" because it was enacted in reaction

to the Supreme Court's decisions in *Bouley*[2] and *Colman*,[3] the holdings of which were limited to "occupants" of motor vehicles; (3) the legislature only intended § 38-336 (f) to clarify the law as it had always existed and, because "insureds" had always had protection under § 38a-336 (a) (1), § 38a-336 (f) did not affect the rights of "insureds" such as Ludemann.

Regarding part one, it is undisputed that the Supreme Court has concluded that generally "insureds" are entitled to uninsured and underinsured motorist coverage under § 38a-336 (a) (1) regardless of whether they were occupying the vehicle: "[T]he legislature, in providing uninsured motorist coverage 'for the protection of persons insured thereunder,' intended to protect insureds all of the time, not only when they are occupants of motor vehicles that are covered by the bodily injury liability provision." *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 252, 449 A.2d 157 (1982); see also *Gormbard* v. *Zurich Ins. Co.*, supra, 279 Conn. 820–21.

Nevertheless, these cases are distinguishable because workers' compensation was not an issue. The plaintiffs in both cases were suing under their personal insurance policies for injuries that were unconnected with their employment. In *Harvey*, the plaintiff sought to recover under his mother's insurance policy for injuries sustained while riding his father's uninsured motorcycle. *Harvey* v. *Travelers Indemnity Co.*, supra, 188 Conn. 245–46. In *Gormbard*, the plaintiffs sought to recover uninsured and underinsured motorist benefits under their specialty insurance policy for their antique automobile despite being injured while occupying a different vehicle. *Gormbard* v. *Zurich Ins. Co.*, supra, 279 Conn. 809–10. These cases are silent, therefore, as to the effect of § 38a-336 (f) and § 31-284.

---

[2] *Bouley* v. *Norwich*, 222 Conn. 744, 610 A.2d 1245 (1992).

[3] *CNA Ins. Co.* v. *Colman*, 222 Conn. 769, 610 A.2d 1257 (1992).

The flaw in Ludemann's argument is his assertion that *Bouley* and *Colman*, and by extension § 38a-336 (f), were concerned only with "occupants" of motor vehicles as opposed to "insureds." Ludemann argues in his memorandum of law that "[t]he plaintiffs in both *Bouley* and *Colman* occupied an employer's vehicle and sought coverage by virtue of such said occupancy. Neither sought coverage as an 'insured.' "

This argument has no merit. The status of the plaintiff as an "insured" was clearly at issue in *Bouley*. In *Bouley*, the plaintiff, who was attempting to recover uninsured and underinsured motorist benefits from his self-insured employer, argued, inter alia, that "he [was] suing the city in its capacity as an *insurer*, not as an employer, and thus the action [was] not barred by § 31-284 (a)." (Emphasis added.) *Bouley* v. *Norwich*, 222 Conn. 744, 751, 610 A.2d 1245 (1992). In fact, the dissent in *Bouley* objected to the majority's decision, citing the very same principles and decision relied on by Ludemann: "[The majority's] holding undermines the statutory requirement that an employer provide uninsured motorist coverage. . . . Section 38a-336 . . . gives all *insureds*—employees and nonemployees alike—a contractual and statutorily mandated right to uninsured motorist coverage."[4] (Citation omitted; emphasis added.) Id., 767 (*Berdon, J.*, dissenting).

---

[4] The majority rejected the plaintiffs' argument in part by applying the same reasoning it used in *Colman*: "[I]n this court's decision in [*Colman*] . . . we concluded that an employer's automobile liability insurance provider was entitled to the same immunity from suit for uninsured motorist benefits for work-related injuries as the employer. We cited the increased costs that would ultimately be borne by the employer for benefits paid by its insurer and concluded that, for purposes of § 31-284 (a) and uninsured motorist benefits, the employer's insurer was the 'alter ego' of its insured. . . . If an employer's automobile liability insurance provider is deemed an 'employer' within the meaning of § 31-284 (a), it would be illogical and inconsistent to conclude that the self-insured employer is anything other than an 'employer.' " (Citation omitted.) *Bouley* v. *Norwich*, supra, 222 Conn. 764.

Given that the *Bouley* court reached the issue of whether "insureds" were entitled to coverage, the legislature was aware of the issue when it enacted § 38a-336 (f). Accordingly, the arbitrators properly relied on *Gomes* in concluding that Ludemann was not "occupying" a motor vehicle for the purposes of § 38a-336 (f).

V

Ludemann's second ground states that the arbitrators' decision violates the public policy embodied in § 38a-336 (a) (1), namely, that insureds are entitled to uninsured and underinsured motorist coverage regardless of their location when injured. To prevail, Ludemann must prove that a strong public policy exists and that the award clearly violates that public policy. See *C. R. Klewin Northeast, LLC* v. *Bridgeport,* supra, 282 Conn. 93–94.

Unquestionably, the policy identified by Ludemann is a strong public policy. The Supreme Court has "conclude[d] that the public policy embodied in General Statutes § [38a-336 (a) (1)] directs that uninsured motorist coverage be provided to insureds when they are not occupants of insured vehicles as well as when they are." *Harvey* v. *Travelers Indemnity Co.,* supra, 188 Conn. 248; see also *Gormbard* v. *Zurich Ins. Co.,* supra, 279 Conn. 815, 819.

Nevertheless, the arbitrators' award is not a clear violation of that public policy because § 38a-336 (a) (1) is not controlling. This court has determined already under de novo review that consistent with *Gomes,* Ludemann was not entitled to underinsured coverage under § 38a-336 (a) (1) because § 38a-336 (f) limited that coverage to those "occupying" the motor vehicle. As discussed in *Gomes,* the legislature enacted § 38a-336 (f) to address the interplay between § 31-284 and § 38a-336 (a) (1) and, in doing so, clarified its public policy.

Accordingly, Ludemann's application to vacate is denied as to this ground.

## VI

Ludemann's third ground asserts that he has a right to underinsured motorist coverage as a third party beneficiary under the insurance policy between his employer and Specialty National and, as a result, falls under an exception to the workers' compensation exclusivity provision in § 31-284 (a). In this context, the insurance policy is alleged to be an exempt "agreement" that allows him additional compensation under the policy. Ludemann relies on the following language in § 31-284 (a): "[N]othing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing *any agreement* for additional compensation." (Emphasis added.) General Statutes § 31-284 (a). Because the insurance policy qualifies under this exception in § 31-284 (a), Ludemann claims that § 38a-336 (f) is inapplicable. Ludemann's interpretation of § 31-284 (a) must fail because it would render § 38a-336 (f) meaningless. Under Ludemann's interpretation of § 31-284 (a), all employees who are insureds (and who would otherwise qualify for liability coverage) would be exempt from the workers' compensation exclusivity rule by virtue of being third party beneficiaries of their employer's insurance policy. As a result, all those employees would be able to seek uninsured and underinsured motorist benefits under their employers' insurance policy regardless of whether they received workers' compensation benefits.

If this were true, however, the legislature would not have needed to enact § 38a-336 (f). The plain language of § 38a-336 (f) provides in relevant part that "an employee of a named insured injured while occupying a covered motor vehicle in the course of employment

shall be covered" by the employer's applicable uninsured and underinsured motorist coverage. General Statutes § 38a-336 (f). This subsection defines the circumstances under which employees who receive workers' compensation benefits can receive uninsured and underinsured motorist coverage under their employers' policies. If employees would receive coverage merely by virtue of being third party beneficiaries under the insurance policy, then § 38a-336 (f) would be superfluous.

It is a "well established principle that statutory provisions should not be read so as to render them meaningless, unnecessary or superfluous . . . ." (Citations omitted.) *State* v. *Russo*, 259 Conn. 436, 455, 790 A.2d 1132, cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002). "The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." (Internal quotation marks omitted.) *Nunno* v. *Wixner*, 257 Conn. 671, 682, 778 A.2d 145 (2001). Accordingly, Ludemann's application to vacate is denied as to this ground.

## VII

Ludemann further argues that he is entitled to coverage because he was "occupying" his motor vehicle as defined by § 38a-336 (f). His arguments regarding "occupying" under the statute are based on the analysis of that term in *Gomes*. The *Gomes* court acknowledged that the term "occupying" was not explicitly defined for the purposes of § 38a-336 (f) and therefore relied on three different sources to determine its meaning: (1) the dictionary definitions of the term "occupy"; (2) the definition of "occupying" in General Statutes § 38a-363 (c); and (3) the Supreme Court's interpretations of "occupying" and similar language used in uninsured and underinsured motorist insurance policy provisions.

*Gomes* v. *Massachusetts Bay Ins. Co.*, supra, 87 Conn. App. 431–35.

For the dictionary definition, the *Gomes* court noted that the definitions of "occupy" in Webster's Third New International Dictionary included "to fill up (a place or extent)" and "to hold possession of [something]." (Internal quotation marks omitted.) Id., 432. The *Gomes* court also observed that under § 38a-363 (c), "[o]ccupying a vehicle means to be in or upon or entering into or alighting from the vehicle"; (internal quotation marks omitted) id.; which contrasted with the definition of "pedestrian" in § 38a-363 (h), which is defined as "any person not occupying a vehicle . . . ." (Internal quotation marks omitted.) Id., 432 n.11.

"In addition to the definitions noted," the court was "guided by [its] case precedent regarding interpretation of the meaning of 'occupying' and other related language used in uninsured and underinsured motorist policy provisions." Id., 432–33. *Gomes* relied on two Connecticut appellate decisions that required "physical contact" with the vehicle to qualify for uninsured and underinsured motorist coverage under the following policy language: "in or upon or entering into or alighting from" and "in, on, getting into or out of" the vehicle. (Internal quotation marks omitted.) Id., 433–34, citing *Allstate Ins. Co.* v. *Howe*, 31 Conn. App. 132, 133–34, 623 A.2d 1031, cert. denied, 226 Conn. 911, 628 A.2d 983 (1993), and *Testone* v. *Allstate Ins. Co.*, 165 Conn. 126, 131, 134, 328 A.2d 686 (1973).

Although the *Gomes* court used these three sources to glean the meaning of "occupying" in § 38a-336 (f), they were not the only basis for the court's conclusion that "occupying" required physical contact. The court also noted that "[a]n expansive interpretation of 'occupying' would undermine the legislature's declaration of its intent [in § 38a-336 (f)] regarding the interplay of

the exclusivity provision of the workers' compensation laws and the uninsured motorist laws." *Gomes* v. *Massachusetts Bay Ins. Co.*, supra, 87 Conn. App. 435.

Given this context, Ludemann asserts a variety of arguments as to how he was "occupying" his motor vehicle under the statute. The initial premise of these arguments is that *Gomes* is factually distinguishable for the following reasons: "[The plaintiff] was intentionally and consciously employing the covered vehicle as an instrument of his duties . . . (placement of the vehicle, lights flashing, engine running) and remained in control of the vehicle sufficient to assure [that] it was not tampered with by any other person. . . . [H]e always maintained proximity to, and control of, the running vehicle." Also, "[the plaintiff] was continuously . . . 'entering into' the vehicle by virtue of his vigilance in assuring [that] no one other than himself gained entry."

The factual distinctions raised by Ludemann—the running engine, the flashing lights and the "placement" of the vehicle—have no bearing on whether he was "occupying" the vehicle on the basis of the definition in *Gomes*. The fact remains that he was not in physical contact with the vehicle and, like the plaintiff in *Gomes*, was in the middle of an intersection directing traffic.

Nevertheless, in an effort to translate these factual distinctions into coverage, Ludemann relies on several expansive interpretations of "occupying." First, Ludemann claims that he was occupying his vehicle on the basis of an extended notion of the dictionary definition of the term cited in *Gomes*. As a point of departure, Ludemann notes that the *Gomes* court relied on the definitions of "occupy" in the Webster's Third New International Dictionary, which included "to fill up (a place or extent)" and "to hold possession of [something]." (Internal quotation marks omitted.) *Gomes* v. *Massachusetts Bay Ins. Co.*, supra, 87 Conn. App. 432.

Moving beyond *Gomes*, Ludemann cites several defini-
tions of "possess" from the American Heritage Diction-
ary, Second College Edition: "To gain or exert influence
or control over; dominate," "to control or maintain
'one's nature' in a particular condition," and "to cause
to be influenced or controlled, as by an idea or emo-
tion." On the basis of these definitions, Ludemann
claims that he was in "possession" of the vehicle and
therefore was "occupying" the vehicle under his under-
standing of the facts.

Second, Ludemann argues that he was in physical
contact with the vehicle on the basis of the discussions
of that doctrine in *Allstate Ins. Co.* and *Testone*. He
maintains that *Allstate Ins. Co.* and *Testone* require this
court to look at the "totality of the circumstances" to
determine whether there was physical contact. One of
the circumstances that purportedly does not require
physical contact, according to Ludemann, is "certain
emergencies" such as when the individual is "elud[ing]
injury," as in *Katz* v. *Ocean Accident & Guarantee
Corp.*, 202 Misc. 745, 112 N.Y.S.2d 737 (1952), cited in
*Testone* v. *Allstate Ins. Co.*, supra, 165 Conn. 133–34.
Ludemann argues that "he took action in reference to
the vehicle in an effort to avoid injury to himself and
others. He left the vehicle running so that the lights
would operate to alert oncoming motorists of the dan-
gers ahead."

Third, Ludemann seizes on the fact that the *Gomes*
court was informed by definitions in insurance policies
when determining the meaning of "occupying" to argue
that this court should similarly be guided under the
terms of the present insurance policy. The uninsured
and underinsured motorist endorsement in the insur-
ance policy states: " 'Occupying' means in, upon, getting
in, on, out or off." Under this definition, Ludemann
claims coverage because he was " 'out' of the vehicle

with direct and proximate connection to the vehicle, both in terms of its utility and control."

All three of Ludemann's arguments ignore the fact that in determining the definition of "occupying" in § 38a-336 (f), the *Gomes* court relied on the combination of dictionary definitions, related definitions in statutes and interpretations of policy language as well as the overarching purpose of the statute. The fact that individually, there may exist different dictionary definitions, different insurance policy language and minor exceptions to the physical contact test does not affect the overall conclusion in *Gomes* that "occupying" in § 38a-336 (f) requires physical contact with the vehicle, especially because *Gomes* also considered the very purpose of the statute.

Even when Ludemann's arguments are judged individually, they are unpersuasive. Ludemann's first argument does not contend that the *Gomes* court's definition of "occupy" is somehow wrong, but rather relies on selective definitions of "possess"—a word that is within one of the definitions of "occupy" used in *Gomes*. Even if one were to follow the argument that far, it is even a further stretch to argue that Ludemann "possessed" the vehicle under the facts.

Ludemann's second argument is without merit: *Testone* clearly holds that to be "upon" an automobile for the purposes of interpreting language in an insurance policy requires physical contact and, therefore, *Testone* does not require reviewing the "totality of the circumstances." *Testone* v. *Allstate Ins. Co.*, supra, 165 Conn. 133–34. Although *Testone* noted that an exception might exist "under certain emergencies," citing *Katz*, that comment was clearly dictum and, in any event, Ludemann would not qualify for that exception under these facts. See id., 133.

Ludemann's third argument is irrelevant, as the language in the present insurance policy has no bearing on the meaning of "occupying" in § 38a-336 (f). In fact, the *Gomes* court explicitly rejected the trial court's use of the policy language in that case to interpret the statute: "Presumably because § 38a-336 (f) does not define 'occupying,' the court, understandably, turned to the policy definition. Although this definition may prove instructive, it does not control our interpretation of the meaning of 'occupying' as used in § 38a-336 (f)." *Gomes* v. *Massachusetts Bay Ins. Co.*, supra, 87 Conn. App. 432.

## VIII

The plaintiffs also apply to vacate the award on the ground that Ennis, as the former spouse of Ludemann, is entitled to loss of consortium benefits for the injuries sustained by Ludemann. It is undisputed that Ennis' claim is derivative of that of Ludemann. Because this court denies Ludemann's application to vacate the arbitral award, Ennis' application is denied as well.

For the foregoing reasons, the plaintiffs' application to vacate the arbitration award is denied.