WILLIAM STREITWEISER *v.* MIDDLESEX MUTUAL ASSURANCE COMPANY
(14239)

PETERS, C. J., SHEA, GLASS, COVELLO and F. X. HENNESSY, Js.

Argued April 24—decision released June 25, 1991

*Brian T. Fischer,* with whom, on the brief, was *Robert LaFrance,* certified legal intern, for the appellant (plaintiff).

*Jon S. Berk,* for the appellee (defendant).

*Suzanne G. Martin-Esposito, William I. Garfinkel* and *William F. Gallagher* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

PETERS, C. J. The dispositive issue reserved for our advice in this case is whether this state's legislative policy mandating insurance protection for someone injured by an *identifiable* uninsured motorist extends

to an accident caused by an *unidentified* vehicle that has no physical contact with the injured claimant. The plaintiff, William Streitweiser, brought an action to vacate an arbitration award that had denied his claim for uninsured motorist coverage under a policy issued by the defendant, Middlesex Mutual Assurance Company. The trial court, in accordance with the parties' stipulation of the relevant facts, reserved the applicable question of law concerning insurance coverage to the Appellate Court. We transferred the reserved question[1] to this court pursuant to Practice Book § 4023. Our answer to the reserved question is "yes."

The parties stipulated that, on May 6, 1989, the plaintiff, while operating his 1979 Cadillac eastbound on I-95 in Guilford, lost control of his car after being cut off by the driver of an unidentified vehicle. The plaintiff's car struck a light stanchion and he suffered personal injuries. There was no physical contact between the plaintiff's car and the unidentified car.

At the time of the accident, the plaintiff was an insured under a personal automobile insurance policy issued by the defendant that provided coverage for injuries caused by an uninsured motorist. The policy's uninsured motorist provisions included coverage for injuries caused by a hit and run vehicle that hit a covered person or vehicle.[2]

---

[1] The question reserved by the trial court is: "Does the Middlesex policy as governed by the General Statutes and the insurance regulations afford uninsured motorist protection to the plaintiff in a case where there was no physical contact between the vehicle of the tortfeasor and that of the plaintiff and the operator and owner of the tortfeasing vehicle are unidentified?"

[2] Part C of the insurance policy issued by the defendant described the policy's uninsured motorist coverage. The policy obligated the defendant to pay damages because of bodily injury arising "out of the ownership, maintenance or use of the uninsured motor vehicle." The policy defined the term "uninsured motor vehicle" as "a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

The arbitrators who were asked to adjudicate this case on the stipulated facts determined, by a divided vote, that the plaintiff's accident was not covered by his uninsured motorist insurance and that the defendant was therefore entitled to prevail. The majority concluded that, in the absence of physical contact, both the terms of the insurance policy and the governing case law required an award in favor of the defendant. The dissenting arbitrator concluded, to the contrary, that "[a] non-contact hit and run vehicle is de facto uninsured" and therefore triggers uninsured motorist insurance coverage.

As a result of the plaintiff's application to vacate the arbitration award, the trial court, at the request of the parties, reserved a question of law for appellate consideration and advice. The reserved question requires us to adjudicate the legal consequences of an accident caused by an unidentified vehicle that, without physical contact, causes injury to an individual or an automobile otherwise covered by uninsured motorist insurance. This question has two subparts: (1) Do the terms of the plaintiff's insurance policy entitle him, as a matter of contract construction, to indemnification for the accident? (2) Does the public policy of this state entitle the plaintiff to indemnification, even if his insurance policy does not so provide?

2. For which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorist Coverage applicable under this policy.

3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

(a) You or any family members;

(b) a vehicle which you or any family member are occupying; or

(c) your covered auto.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

(a) denies coverage; or

(b) is or becomes insolvent."

Because General Statutes (Rev. to 1989) § 38-175c (a) (1) mandates arbitration of issues of coverage relating to uninsured motorist insurance, a "reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 191, 530 A.2d 171 (1987); *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 655 n.11, 591 A.2d 101 (1991). Undertaking that plenary review, we conclude that, although the plaintiff cannot prevail as a matter of contract law, he is entitled to recover because of the public policy favoring uninsured motorist coverage as set forth in § 38-175a-6 (a) of the Regulations of Connecticut State Agencies.

I

Well established rules of contract construction counsel us, in the event of ambiguity, to construe the terms of an insurance policy in favor of insurance coverage because it is the insurance company that has drafted the terms of the policy. *Schultz* v. *Hartford Fire Ins. Co.,* 213 Conn. 696, 702, 569 A.2d 1131 (1990); *Beach* v. *Middlesex Mutual Assurance Co.,* 205 Conn. 246, 250, 532 A.2d 1297 (1987); *Griswold* v. *Union Labor Life Ins. Co.,* 186 Conn. 507, 512–13, 442 A.2d 920 (1982); see also 2 Restatement (Second), Contracts (1981) § 206. "[A] limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer." *American Universal Ins. Co.* v. *DelGreco,* supra, 196. A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 583–84, 573 A.2d 699 (1990).

The plaintiff maintains that the policy issued by the defendant is ambiguous in its definition of a hit and run

vehicle for which uninsured motorist coverage is available. The policy purports to limit such coverage to "a hit and run vehicle whose operator or owner cannot be identified and which hits" a covered person or auto. The plaintiff asserts that "hits" is ambiguous because dictionary definitions of "hit" include "affect strongly and adversely" and thus contemplate circumstances other than physical contacts. See Webster's Third New International Dictionary. We are unpersuaded.

In context, the policy's reference to "a hit and run vehicle . . . which hits" is not ambiguous. Contractual coverage for any hit and run accident necessarily contemplates that the insured has suffered adverse consequences, because otherwise there would be no occasion for indemnification. The addition of the phrase "which hits" would be superfluous unless it was intended to limit the circumstances under which indemnification is payable for injuries arising out of such accidents. If it is reasonably possible to do so, every provision of an insurance policy must be given operative effect. *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* 153 Conn. 618, 621–22, 220 A.2d 32 (1966). The natural and ordinary meaning of "hits" must therefore be taken to express the intent of the parties. See *Hammer* v. *Lumberman's Mutual Casualty Co.,* supra. So construed, the coverage afforded to the plaintiff is limited, as a matter of contract law, to hit and run accidents involving physical contact with the tortfeasor.

II

The plaintiff maintains that, as a matter of public policy, the defendant was not entitled contractually to exclude from uninsured motorist coverage his right to indemnification for injuries he sustained as a result of his encounter with the tortfeasor, even though there was an absence of any physical contact between them.

He relies on the strong public policy favoring uninsured motorist coverage that has marked our legislative and regulatory history since 1967, and on a trial court opinion by Judge Clark in a factually similar case, *Fox* v. *Fidelity & Casualty Co.*, Superior Court, judicial district of New Haven, Docket No. 86-0250977S (January 30, 1987).

The legislative policy favoring uninsured motorist coverage is contained in General Statutes (Rev. to 1989) § 38-175c (a) (1), which requires every automobile liability insurance policy to include such coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ." The accompanying regulation, § 38-175a-6 (a) of the Regulations of Connecticut State Agencies, accordingly provides: "The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. . . ."

This regulatory pattern establishes the public policy that "every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Insurance companies are powerless to restrict the broad coverage mandated by the statute." *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982). To implement this established policy, we have held repeatedly that "an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies *expressly* authorizes." (Emphasis added.) *Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 483, 518 A.2d

373 (1986); *Dixon* v. *Empire Mutual Ins. Co.,* 189 Conn. 449, 452–53, 456 A.2d 335 (1983); *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 398–99, 446 A.2d 1059 (1982); *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 332–33, 387 A.2d 539 (1978); *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 448–51, 370 A.2d 1006 (1976). Significantly, the applicable regulations do not expressly exclude uninsured motorist coverage for accidents in which the tortfeasor's conduct, without physical contact, causes an otherwise covered insured to sustain personal injuries.

This history would require us to answer the reserved question in favor of insurance coverage, but for two cases in which a majority of this court determined that an accident caused by an unidentified vehicle that made no contact with the vehicle of an injured claimant was not an accident caused by an uninsured motorist. In *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 507, 363 A.2d 1055 (1975), the court concluded that the statutory and regulatory reference to "uninsured motorist" was not intended to include "what are commonly called hit-and-run operators." In *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 423, 374 A.2d 1076 (1977), the court concluded that an insurance policy extending coverage to "hit and run" situations could validly include "the requirement of physical contact between a vehicle and the insured or a vehicle occupied by the insured at the time of the accident." Both cases engendered vigorous dissents on public policy grounds. We have had no occasion, since 1977, to reexamine their merits.

The plaintiff urges us to hold that the terms of his insurance policy are distinguishable from those in *Rosnick.* The Aetna policy in that case unequivocally required "physical contact" as a condition for extending uninsured motorist coverage to encompass hit and

run accidents; id., 421; while the Middlesex policy in this case merely refers to a hit and run vehicle that "hits." That is a distinction without a difference. We see no functional difference in the relevant language of the two policies.

The fundamental issue is whether we should reconsider *Rosnick* and *Weingarten* in light of the public policy expressed in *Harvey* v. *Travelers Indemnity Co.*, supra, and *Allstate Ins. Co.* v. *Ferrante,* supra. The defendant urges us not to do so because the legislature, having undertaken to amend § 38-175c on several occasions since 1977, has not changed the rulings of *Rosnick* and *Weingarten* and has therefore impliedly incorporated those rulings into the statute. We are unpersuaded that legislative inaction invariably warrants recognition as a reliable indicator of legislative intent. The legislature has been as silent in its response to our holdings in *Harvey* and *Allstate Ins. Co.* as it was to our holdings in *Rosnick* and *Weingarten.* Because these diverse holdings look in different directions, the legislature cannot logically have acquiesced in them all. Furthermore, as we recently noted in *Greenwich* v. *Department of Public Utility Control,* 219 Conn. 121, 127–28 n.6, 592 A.2d 372 (1991), even legislative inaction is " 'not the best of guides to legislative intent.' " *Red Lion Broadcasting Co.* v. *FCC,* 395 U.S. 367, 381–82 n.11, 89 S. Ct. 1794, 23 L. Ed. 2d 371 (1969). We conclude, therefore, that we may appropriately reconsider *Rosnick* and *Weingarten,* and that we should overrule their holdings with respect to uninsured motorist coverage.

The starting point for revisiting this issue is that, with respect to uninsured motorist coverage in general, we can discern no viable distinction between identified and unidentified uninsured tortfeasors. From the point of view of the injured claimant whom § 38-175c is intended

to protect, it does not matter whether the tortfeasor is a known person who is uninsured or underinsured or an unidentified motorist whose insurance coverage, if any, is functionally unavailable. Indeed, the policy coverage bought by the plaintiff in this case expressly provides some uninsured motorist coverage in either case.

The only obstacle to the plaintiff's indemnification is therefore a policy condition that limits uninsured motorist coverage when an unidentified motorist causes physical injury without physically making contact with the claimant or his automobile. Assigning a dispositive role to physical contact in this case would, however, be inconsistent with prevailing legal principles for four reasons. First, in the case of accidents caused by identified uninsured motorists, physical contact is not a prerequisite to uninsured motorist coverage. Second, the regulatory provisions that most directly pertain to this situation, General Statutes (Rev. to 1989) § 38-175c, and § 38-175a-6 (a) of the Regulations of Connecticut State Agencies, do not expressly interpose physical contact as a condition to recovery. Third, physical contact is not an element of the parallel provision in our criminal law, which imposes sanctions on hit and run drivers for the crime of evasion of responsibility in the operation of motor vehicles. Under General Statutes § 14-224, liability turns on the factual question of whether the operator was knowingly involved in an accident that caused physical injury, and not on whether the accident arose out of physical contact with another person. Fourth, an insistence on physical contact would lead to the bizarre result of providing uninsured motorist coverage for the less vigilant driver who does not avoid a collision but denying such coverage to the more adroit driver who manages to avoid this greater hazard. Nothing in our legal landscape supports so anomalous a distinction.

There are, on the contrary, sound affirmative reasons for recognizing the liability of the tortfeasor, and for imposing responsibility for indemnification on the insurer, without regard to physical contact. As elsewhere in our law, liability ordinarily flows from the breach of a duty and the injury proximately related thereto, rather than from the manner in which the breach of that duty becomes manifest. "It will be recalled that in tort law it is certainly not essential that contact be had in order for liability to arise." 8C J. & J. Appleman, Insurance Law and Practice (Rev. Ed. 1981) § 5095.25, p. 421. Imposing liability for reimbursement on the defendant is particularly appropriate in this case, where the parties have stipulated to the fact of the existence of a causal relationship between the conduct of the hit and run driver and the injuries sustained by the plaintiff.

Our conclusion that a physical contact requirement is inconsistent with statutorily mandated uninsured motorist coverage finds support in the case law elsewhere. The leading academic authority on uninsured motorist insurance reports that a majority of American courts have now rejected such a limitation in whole or in part as an unjustifiable deviation from the legislative goals of uninsured motorist legislation. A. Widiss, Uninsured and Underinsured Motorist Insurance (1990 Ed.) §§ 9.2–9.9, esp. pp. 458, 485 and 491. Among the state cases that have taken that posture since 1977 are *State Farm Mutual Automobile Ins. Co.* v. *Abramowicz,* 386 A.2d 670, 674 (Del. 1978); *Simpson* v. *Farmers Ins. Co.,* 225 Kan. 508, 515, 592 P.2d 445 (1979); *Lanzo* v. *State Farm Mutual Auto Ins. Co.,* 524 A.2d 47, 50 (Me. 1987); *Lee* v. *Wheeler,* 310 Md. 233, 243, 528 A.2d 912 (1987); *Surrey* v. *Lumbermens Mutual Casualty Co.,* 384 Mass. 171, 178, 424 N.E.2d 234 (1981); *Merchants Mutual Ins. Group* v. *Orthopedic Professional Assn.,*

124 N.H. 648, 653–54, 480 A.2d 840 (1984); *Perez* v. *American Bankers Ins. Co.,* 81 N.J. 415, 419, 409 A.2d 269 (1979); *Pin Hin H. Su* v. *Kemper Ins. Companies/American Motorists Ins. Co.,* 431 A.2d 416, 419 (R.I. 1981); and *Marakis* v. *State Farm Fire & Casualty Co.,* 765 P.2d 882, 885 (Utah 1988); contra *Boyd* v. *Inter-Insurance Exchange of Automobile Club of Southern California,* 136 Cal. App. 3d 761, 764, 186 Cal. Rptr. 443 (1982); *Stamper* v. *Allstate Ins. Co.,* 115 Idaho 237, 766 P.2d 707 (1988); *Lemke* v. *Kenilworth Ins. Co.,* 109 Ill. 2d 350, 354, 487 N.E.2d 943 (1985); *Rohret* v. *State Farm Mutual Automobile Ins. Co.,* 276 N.W.2d 418, 421 (Iowa 1979); *Belcher* v. *Travelers Indemnity Co.,* 740 S.W.2d 952, 953 (Ky. 1987); *State Automobile Mutual Ins. Co.* v. *Rowe,* 28 Ohio St. 3d 143, 145, 502 N.E.2d 1008 (1986); *Hayne* v. *Progressive Northern Ins. Co.,* 115 Wis. 2d 68, 85, 339 N.W.2d 588 (1983).

Although we now choose to follow the path taken by the majority of state courts, and advocated by the commentators; see A. Widiss, supra; 8C J. & J. Appleman, supra; we recognize that the minority position upholding the physical contact requirement addresses a legitimate concern. In the absence of physical contact, there is a risk that a claimant may conjure up a phantom motorist to explain a one-car accident for which the claimant was in fact entirely responsible. Insurance coverage must be limited to cases in which there is some reasonable assurance of sufficient evidence to establish a causal connection between the injuries sustained by the claimant and the alleged negligence of the alleged hit and run motorist.

To minimize the risk of fraudulent assertion of uninsured motorist claims, it may well be appropriate to adopt "[s]ome standard of corroboration to support a claimant's contention that the injuries for which com-

pensation is sought were indeed caused by a hit-and-run motorist . . . ." A. Widiss, supra, § 9.4, p. 448; see *Brown* v. *Progressive Mutual Ins. Co.*, 249 So. 2d 429, 430 (Fla. 1971); but see contra *Perez* v. *American Bankers Ins. Co.*, supra (corroboration requirement invalid as contrary to public policy); and cf. *Mosher* v. *Bennett*, 108 Conn. 671, 674, 144 A. 297 (1929) (putative father must dispute paternity "by other evidence than his own"). Even though corroboration requirements have a statutory foundation in some states; see, e.g., Ga. Code Ann. § 33-7-11 (b) (2) (1990); Or. Rev. Stat. § 743.792 (g) (B) (1981); Wash. Rev. Code Ann. § 48.22.030 (8) (a) (1989); we do not doubt our authority to require a claimant, if he is put to his proof, to present some evidence to corroborate his representation of how the accident occurred. Because the parties in this case stipulated to the existence of a causal relationship between the plaintiff's injuries and the unidentified vehicle that he swerved to avoid we need not resolve this issue today.

To the reserved question, "Does the Middlesex policy as governed by the General Statutes and the insurance regulations afford uninsured motorist protection to the plaintiff in a case where there was no physical contact between the vehicle of the tortfeasor and that of the plaintiff and the operator and owner of the tortfeasing vehicle are unidentified?", our answer is "yes." The case is therefore remanded to the trial court with direction to vacate the arbitration award in favor of the defendant.

No costs shall be taxed to either party.

In this opinion the other justices concurred.