D'AURIA, J.
**667 In these appeals, we again consider whether an automobile insurance policy containing underinsured motorist coverage, as required by state law, can validly exclude benefits to the insured when the owner of the underinsured vehicle is a rental car company designated as a "self-insurer" by the Insurance Commissioner (commissioner) pursuant to General Statutes § 38a-371 (c). We first addressed this issue in Orkney v. Hanover Ins. Co. , 248 Conn. 195, 202-206, 727 A.2d 700 (1999), and upheld the validity of § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies, which authorizes an exclusion from the underinsured motorist coverage requirement for "uninsured or underinsured vehicle[s] ... owned by ... a self-insurer under any motor vehicle law *102 ...."[1] We **668 came to this conclusion because self-insurers are statutorily required to prove their ability to pay judgments when liable, rendering underinsurance coverage unnecessary in those situations. Orkney v. Hanover Ins. Co. , supra, at 204-206, 727 A.2d 700 ; see General Statutes §§ 14-129 (b) and 38a-371 (c). Therefore, we decided in Orkney that there was "nothing inconsistent between the public policy underlying underinsured motorist coverage and a regulation that permits a coverage exclusion" for vehicles owned by self-insurers. Orkney v. Hanover Ins. Co. , supra, at 206, 727 A.2d 700.
The factual setting in the present case is similar to that in Orkney , but the legislative landscape has changed. In both the present case and in Orkney , the plaintiff insureds were injured by an underinsured lessee driving a rental car owned by a self-insured rental car company. See id., at 197-99, 727 A.2d 700. The insureds were denied underinsured motorist benefits under their policies because those policies contained a self-insurer exclusion. Id., at 199-200, 727 A.2d 700.
Since our decision in Orkney , however, Congress passed legislation prohibiting rental car companies from being held vicariously liable for the negligence of their lessees. Specifically, Title 49 of the 2012 edition of the United States Code, § 30106 (a), commonly known as the Graves Amendment; see Rodriguez v. Testa , 296 Conn. 1, 4 n.2, 993 A.2d 955 (2010) ; makes rental car companies immune from vicarious liability for injuries caused by their underinsured lessees-even if a state has designated that company as a self-insurer capable of providing a remedy. Thus, under current law, when the plaintiffs in the present case were denied underinsured motorist benefits pursuant to their policies because of the self-insurer exclusion, they were effectively left without a remedy because they are precluded under the Graves Amendment from recovering from the self-insured rental car company.
**669 We are therefore asked in these appeals to reassess, in light of this development in federal law, whether § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies, which authorizes the self-insurer exclusions in these insurance policies, remains valid as applied to rental car companies. We conclude that, in this scenario, the state regulation conflicts with the public policy manifested in General Statutes § 38a-336 (a) (1) that requires insurance policies to provide underinsured motorist coverage, and, thus, § 38a-334-6 (c) (2) (B) of the regulations is invalid as applied.
I
The following undisputed facts and procedural history are relevant to this appeal.
*103 The plaintiffs, Sandra and Patrick Tannone, were lawfully crossing the street when they were struck and seriously injured by an automobile. That automobile was a rental car owned by EAN Holdings, LLC, more commonly known as Enterprise Rent-A-Car (Enterprise). Enterprise had leased the vehicle to Barbara Wasilesky, but she was not driving at the time of the collision. The vehicle was instead operated by a permitted user named Arthur Huffman.
Wasilesky, the lessee, was the named insured on an automobile insurance liability policy that provided bodily injury coverage in the amounts of $20,000 per person and $40,000 per occurrence-the minimum allowable in Connecticut at the time. General Statutes §§ 38a-336 (a) (1) and 14-112 (a).[2] The plaintiffs made a claim against Wasilesky, as the lessee, and Huffman, as the vehicle operator, and the parties settled for the full amount of coverage from Wasilesky's policy, **670 namely, $20,000 each.[3] Wasilesky and Huffman have no other insurance coverage, and the plaintiffs claim that their damages exceed what they recovered under Wasilesky's insurance policy.
At the time of the collision, the defendant, Amica Mutual Insurance Company (Amica), insured the plaintiffs through separate policies. Each of their policies carried $500,000 of coverage for personal injuries sustained due to the negligence of an underinsured driver.[4] This underinsured motorist coverage, however, excluded from the term " 'underinsured motor vehicle' " any vehicle "[o]wned ... by a self-insurer under any applicable motor vehicle law." (Emphasis added.) Enterprise was designated a self-insurer by the commissioner, making it eligible for the exclusion.
After settling with Wasilesky and Huffman, the plaintiffs commenced this consolidated action to recover underinsured motorist benefits from their own insurance policies issued by the defendant. In response, the defendant asserted special defenses, including that the policies do not afford underinsured motorist benefits **671 when the tortfeasor's vehicle is owned by a self-insurer. The defendant moved for summary judgment, arguing that it was entitled to judgment as a matter of law because the vehicle driven by Huffman was owned by a self-insurer, Enterprise, and because the plaintiffs did not demonstrate that they had exhausted their remedy from Enterprise. In support of *104 the validity of the exclusion, the defendant pointed to § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies, which expressly authorizes such exclusions, and to Orkney v. Hanover Inc. Co. , supra, 248 Conn. at 195, 202-206, 727 A.2d 700, in which this court confirmed the validity of that regulation and a similar coverage exclusion. The plaintiffs asserted in response that the defendant's reliance on Orkney is misplaced because it predated the Graves Amendment, which eliminated the possibility that the plaintiffs could recover from Enterprise. The trial court nevertheless agreed with the defendant and granted its motions for summary judgment. The plaintiffs moved for reargument, and the trial court denied their motions.
The plaintiffs then appealed from the judgments of the trial court to the Appellate Court, and this court transferred the appeals to itself. See General Statutes § 51-199 (c) ; Practice Book § 65-1. Because a trial court's decision granting a motion for summary judgment and issues of statutory construction present questions of law, our review on appeal is plenary. See, e.g., Rodriguez v. Testa , supra, 296 Conn. at 6-7, 993 A.2d 955 (setting forth standard for granting motion for summary judgment); see also General Statutes § 1-2z (setting forth plain meaning rule governing statutory interpretation).
The plaintiffs claim that the self-insured exclusion in their underinsured motorist coverage does not apply to Enterprise due to the fact that the regulation authorizing that exclusion, § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies, is invalid as applied to Enterprise because Enterprise cannot be held liable **672 following the Graves Amendment. See Giglio v. American Economy Ins. Co. , 278 Conn. 794, 804 and n.9, 900 A.2d 27 (2006) (determining validity of coverage exclusion based on validity of insurance regulation authorizing exclusion). "[I]t is well established that an administrative agency's regulations are presumed valid and, unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute .... Moreover, [a] person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant." (Citation omitted; internal quotation marks omitted.) Id., at 806-807, 900 A.2d 27 ; see Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 203, 727 A.2d 700. We agree with the plaintiffs that, under these circumstances, the regulation giving rise to the self-insurance exclusion in the plaintiffs' policies is inconsistent with the authorizing statutes and, therefore, is invalid as applied to Enterprise. Accordingly, we reverse the judgments of the trial court and remand the cases to that court for further proceedings.
II
We first consider the interconnected legislative, regulatory, and public policy backdrop confronting us in this appeal, including how that backdrop has changed. Our state law requires all motor vehicle owners to maintain a minimum amount of automobile liability insurance coverage. General Statutes § 38a-335 (a). The legislature understood that some motorists will not comply with this law, however. Thus, to protect properly insured motorists from the negligence of financially irresponsible motorists, our state law expressly provides that every automobile insurance policy must provide its insured with a minimum amount of uninsured and underinsured motorist coverage as provided for in § 14-112 (a). General Statutes § 38a-336 (a) (1) (A) ("[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured *105 **673 motorist coverage ... for the protection of persons insured thereunder who are legally entitled to recover damages because of bodily injury, including death resulting therefrom, from owners or operators of uninsured motor vehicles and underinsured motor vehicles"). Our state has consistently maintained a "strong public policy favoring uninsured motorist coverage ... since 1967 ...." Streitweiser v. Middlesex Mutual Assurance Co. , 219 Conn. 371, 377, 593 A.2d 498 (1991). Specifically, that public policy dictates that "every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist [responsible for the insured's injury] had maintained a policy of liability insurance." (Internal quotation marks omitted.) Gormbard v. Zurich Ins. Co. , 279 Conn. 808, 817, 904 A.2d 198 (2006). In short, the legislature and this court have a well established and deliberate policy in favor of insuring the risk of loss resulting from the negligence of uninsured and underinsured motorists.
The rationale behind this policy is "to reward those who obtain insurance coverage for the benefit of those they might injure." (Internal quotation marks omitted.) Id., at 824, 904 A.2d 198. We have supported coverage arrangements that have "furthered the important public policy goals of the uninsured motorist statute." (Emphasis in original.) Id. ; see General Statutes § 38a-336 (a) (1) (A). And in support of the "broad, remedial purpose of the uninsured motorist statute"; Gormbard v. Zurich Ins. Co. , supra, 279 Conn. at 814, 904 A.2d 198 ; we have stated "that an insurer may [not] circumvent th[at] public policy ...." Id., at 823, 904 A.2d 198.
As stated previously, Wasilesky maintained only the minimum required amount of coverage at the time of the collision: $20,000 per person and $40,000 per collision. The plaintiffs' policies grant underinsured motorist benefits when the tortfeasor "does carry [l]iability **674 insurance but the amount of insurance available under that motorist's policy is less than the amount of [u]ninsured [m]otorists coverage you have selected." They allege entitlement to underinsured motorist benefits in this instance because their damages exceed the amount of the recovery from Wasilesky's policy.
The manner in which an insurer provides underinsured motorist coverage to its policyholders is regulated by §§ 38a-334 (a) and 38a-336 (a) (1) (A), which authorize the commissioner to adopt regulations that "relate to," among other things, "insuring agreements, exclusions ... and [under]insured motorists coverages under such policies ...." General Statutes § 38a-334 (a). Ordinarily, "an insurer may not, by contract, reduce its liability for ... uninsured or underinsured motorist coverage," unless authorized by § 38a-334-6 of the Regulations of Connecticut State Agencies. (Internal quotation marks omitted.) Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 201, 727 A.2d 700 ; see Gormbard v. Zurich Ins. Co. , supra, 279 Conn. at 817, 904 A.2d 198 ("[i]nsurance companies are powerless to restrict the broad coverage mandated by the statute" [internal quotation marks omitted] ).
One authorized exclusion under the regulations to the requirement for underinsured motorist coverage is when "the uninsured or underinsured motor vehicle is owned by ... a self insurer under any motor vehicle law ...." (Emphasis added.) Regs., Conn. State Agencies § 38a-334-6 (c) (2) (B). The defendant has included such an exclusion in the policies it issued to the plaintiffs. Specifically, those policies exclude from the term " 'uninsured motor vehicle' " any vehicle "owned ... by a self-insurer under any applicable motor vehicle *106 law ...." (Emphasis added.) A person may qualify as a self-insurer if "more than twenty-five motor vehicles are registered" in his name and he has obtained "a certificate of self-insurance issued by the commissioner ...." General Statutes § 14-129 (a). The commissioner **675 has "discretion" to grant self-insurer applications and issue a certificate of self-insurance "when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person." (Emphasis added.) General Statutes § 14-129 (b). To prove this ability, self-insurers must file evidence with the commissioner that their financial security is substantially equivalent to an insurance policy. General Statutes § 38a-371 (c). In short, the key to obtaining self-insurer status is to "demonstrate ... the ability to pay judgments rendered ... as a result of the operation of the motor vehicle." Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 206, 727 A.2d 700.
There is no dispute that the commissioner has designated Enterprise as a self-insurer. But now, after Congress passed the Graves Amendment, Enterprise cannot be held vicariously liable for the negligence of its customers. The relevant legislative landscape has thus changed since our decision in Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 195, 727 A.2d 700, which upheld the self-insurer exclusion, requiring us now to consider whether that case remains controlling.
In Orkney , the case the defendant principally relies upon, we addressed the question of whether § 38a-334-6 of the Regulations of Connecticut State Agencies validly permitted an insurer to exclude underinsured motorist coverage from a policy when the tortfeasor's vehicle was owned by a self-insurer. Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 202-203, 727 A.2d 700. Orkney involved facts similar to this case: the plaintiff, a passenger in a motor vehicle, was injured by the alleged negligence of another motorist driving a rental car owned by a self-insurer. Id., at 197, 727 A.2d 700. Because the negligent motorist was underinsured, the plaintiff in Orkney sought compensation from the defendant, her insurance company. See id., at 198-99, 727 A.2d 700. Arguing that the plaintiff "had failed to exhaust the liability coverage available to [the rental **676 car company] as the owner of the rental car"; id., at 199, 727 A.2d 700 ; the defendant insurance company in Orkney , like the defendant in the present case, pointed to its explicit exclusion of "vehicles owned by self-insurers from the policy definition of underinsured motor vehicles." Id., at 200, 727 A.2d 700.
We concluded in Orkney that § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies validly authorized "the exclusion of vehicles owned by self-insurers from the scope of the underinsured motorist coverage provided by an automobile liability insurance policy." Id., at 202, 727 A.2d 700. We further concluded that there is "nothing inconsistent between the public policy underlying underinsured motorist coverage and a regulation that permits a coverage exclusion [for self-insurers]." Id., at 206, 727 A.2d 700.
We recognized in Orkney , however, that the underinsured motorist statute, § 38a-336, "does not require that [under]insured motorist coverage be made available when the insured has been otherwise protected ...." (Emphasis added; internal quotation marks omitted.) Id., at 205, 727 A.2d 700. Thus, central to our decision in Orkney was the injured party's ability to "seek compensation from the [self-insurer]" for the negligence of its lessees. Id., at 206, 727 A.2d 700. This avenue of recourse was assured by the statutory requirements that self-insurers prove their "ability to *107 pay judgments [rendered] against [them]." General Statutes § 14-129 (b) ; see General Statutes § 38a-371 (c) (3) (self-insurer must provide "evidence that reliable financial arrangements ... exist providing assurance for payment of all obligations"). Recourse was also assured by the statute requiring financial security "substantially equivalent to those afforded by a policy of insurance ...." General Statutes § 38a-371 (c). In other words, at the time of our decision in Orkney , the self-insurer exclusion did not foreclose the insured from a remedy. Instead, the exclusion essentially directed **677 the insured to seek another source of compensation for her injuries: the self-insurer. See Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 206, 727 A.2d 700.
Six years after Orkney , however, Congress passed the Graves Amendment, which provides in relevant part that a rental car company that owns a vehicle "shall not be liable under the law of any [s]tate ... for harm to persons or property that ... arises out of the use, operation, or possession of the vehicle during the period of the rental or lease," unless there is "negligence or criminal wrongdoing on the part of the owner ...." 49 U.S.C. § 30106 (a) (2012). Under federal law, therefore, a rental car company cannot be held vicariously liable for the negligence of its lessees. As we recognized in Rodriguez v. Testa , supra, 296 Conn. at 3-5, 993 A.2d 955, the Graves Amendment preempted General Statutes § 14-154a (a), which imposed vicarious liability on rental car companies for damage caused by their lessees.
The Graves Amendment has therefore fundamentally changed our legislative and regulatory landscape. Now, injured parties are precluded by federal statute from seeking compensation from rental car companies as self-insurers, undercutting the primary rationale on which Orkney was decided. And now, the injured party's inability to seek compensation from the self-insurer has created an "inconsisten[cy] between the public policy underlying underinsured motorist coverage and [the] regulation that permits a coverage exclusion" for self-insurers that did not exist at the time we decided Orkney . Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 206, 727 A.2d 700. The exclusion of vehicles owned by a self-insurer from the underinsured motorist coverage requirement, without also providing recourse against that self-insurer, contravenes the "strong public policy favoring uninsured motorist coverage" deliberately articulated in § 38a-336 (a) (1) (A). Streitweiser v. Middlesex Mutual Assurance Co. , supra, 219 Conn. at 377, 593 A.2d 498. Specifically, **678 the effect of the defendant's self-insurer exclusion with respect to rental car companies upends the well-established public policy that "every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance." (Internal quotation marks omitted.) Gormbard v. Zurich Ins. Co. , supra, 279 Conn. at 817, 904 A.2d 198. Instead of "reward[ing] those who obtain insurance coverage," like the plaintiffs in the present case; (internal quotation marks omitted) id., at 824, 904 A.2d 198 ; permitting this policy exclusion under the current circumstances defeats the legislative purpose of requiring underinsured motorist coverage in the first place-to protect against harm caused by financially irresponsible motorists.
The federal legislation that upset our state regulatory structure regarding underinsured motorist coverage therefore results in an impermissible contradiction between our state statutes and regulations. On the one hand, § 38a-336 (a) (1) (A) requires underinsured motorist coverage *108 while, on the other hand, § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies permits the exclusion of underinsured motorist coverage as to vehicles owned by self-insurers-now without a substitute remedy. Although the defendant is correct that state regulations are ordinarily given "great deference" and are generally presumed to accurately reflect legislative intent; (internal quotation marks omitted) Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 203-204, 727 A.2d 700 ; that deference is lost when the regulations "are shown to be inconsistent with the authorizing statute ...." (Internal quotation marks omitted.) Velez v. Commissioner of Labor , 306 Conn. 475, 485, 50 A.3d 869 (2012). In light of the Graves Amendment, § 38a-334-6 of the regulations now contradicts the public policy behind the underinsured motorist statute, § 38a-336 (a) (1) (A), in contexts such as the one presented in this case **679 because, as a matter of law, the regulation's exclusionary provision forecloses the possibility of the plaintiffs' recovery-instead of directing them to an alternative recourse. Under these circumstances, Orkney can therefore no longer bind our interpretation of § 38a-334-6 of the regulations[5] without entirely precluding insureds from a remedy for an accident with an underinsured motorist in contravention of the public policy behind § 38a-336 (a) (1) (A).
In the present case, the plaintiffs made every effort to insure against the risk of the very injuries they sustained. Their insurance policies contain the mandatory underinsured motorist coverage. They did not know-and could not control-that the underinsured motorist who collided with them would be the lessee of a rental car, the owner of which enjoys federal immunity from vicarious liability and, yet, whose status as a self-insurer under state law triggered an exclusion in the plaintiffs' policies that would foreclose their recovery from the defendant. Taking into account the Graves Amendment, the uninsured and underinsured motorist statutes, related state regulations, and the underlying public policy of providing those injured by underinsured motorists with a remedy, we conclude that § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies now is inconsistent with the public policy of § 38a-336 and, thus, is invalid as applied. Giglio v. American Economy Ins. Co. , supra, 278 Conn. at 806-807, 900 A.2d 27 (administrative agency's regulations are invalid if inconsistent with authorizing statute); see Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 203, 727 A.2d 700.
**680 III
The plaintiffs advance other public policy arguments that dovetail with or bolster our conclusion that, as applied in this case, § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies conflicts with the underinsured motorist statute. Specifically, they argue that, after the Graves Amendment, "Enterprise cannot be considered a self-insurer ... [and] [t]herefore, the self-insurer exclusion [contained in the defendant's policies] does not apply." If it did, they claim, the exclusion would violate the public policy of this state. We agree.
A recent decision of the Tennessee Supreme Court is instructive.
*109 Martin v. Powers , 505 S.W.3d 512, 515, 518 (Tenn. 2016), involved facts similar to the present case, including that Enterprise was the rental car company that owned the alleged " 'underinsured motor vehicle' " that collided with the plaintiff. That court addressed whether, after the Graves Amendment, an insurance policy can validly exclude uninsured motorist benefits when the insured is injured by a rental car owned by a " 'self-insurer.' " Id., at 515-16. That court concluded that the rental car company was not a self-insurer as to the negligence of its lessees because "one cannot insure against a [nonexistent] risk"; id., at 520 ; and there is "no legitimate reason to require proof of financial security for potential liabilities that are, in fact, [nonexistent]." Id., at 525 (citing Graves Amendment). The court also reasoned that applying the exclusion contravenes "the underlying [public policy] purpose of uninsured motorist coverage, which is to pay compensation to the insured policy owner when the liable third party is unable to do so." Id., at 520. "Indeed, the designation of 'self-insurer' is nonsensical when applied to a class of risks from which Enterprise is statutorily [immune]." Id., at 525. The Tennessee Supreme Court went on to declare that "[w]e are confident that our [l]egislature did not intend that rental cars operated in Tennessee **681 could be simultaneously uninsured, yet not meet the statutory definition of uninsured, all while considered self-insured by the rental company's assets to which the injured victim would have no recourse." Id., at 525 n.7.
We are similarly confident. Enterprise, as a matter of law, could not be a self-insurer as to the class of risks in the present case because it is statutorily immune from liability for such risks. See id., at 525 ; J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (4d Ed. 2010) § 3.14, p. 373 n.102 ("In order to trigger [underinsured motorist] coverage in the first instance, there must be a finding that the plaintiff is legally entitled to recover damages from the self-insured tortfeasor.... Applying the 'owned by a self-insurer' exclusion when the self-insured entity has no legal liability is counter-intuitive." [Citation omitted.] ). We have established that, "[i]n an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co. , 214 Conn. 573, 588, 573 A.2d 699 (1990). Because Enterprise cannot, as a matter of federal law, be held responsible for the negligence of its lessees, it cannot be considered as a self-insurer for the purposes of that exclusion in the plaintiffs' policies. See Martin v. Powers , supra, 505 S.W.3d at 525, 505 S.W.3d 512. Enterprise is not obligated to compensate parties' injured by the conduct of its lessees, and, therefore, it has no obligation to satisfy a judgment rendered in such an action-the hallmark of self-insurer status. See id., at 520 ; see generally Garcia v. Bridgeport , 306 Conn. 340, 365-66, 51 A.3d 1089 (2012) (stating that "critical substantive" feature of self-insurers is that they are "presumed to have the ability to pay, and indeed ... the obligation to pay in full any judgment against it").
**682 In light of the Graves Amendment, construing Enterprise as a self-insurer in this context would contravene our public policy. If we were to interpret Enterprise's self-insurer status to exist as to damages caused by its lessees, it would demand that we honor the coexistence of § 38a-336 (a) (1) (A) and § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies. We have concluded previously *110 in this opinion that § 38a-334-6 (c) (2) (B) of the regulations contravenes the public policy articulated in § 38a-336 (a) (1) (A), the underinsured motorist statute, under the present circumstances. Similarly, to enforce the contract of insurance as the defendant would have us construe it would lead to an unworkable outcome and would itself violate public policy. See Geysen v. Securitas Security Services USA, Inc., 322 Conn. 385, 392-93, 142 A.3d 227 (2016) ("[i]f a contract violates public policy, this would be a ground to not enforce the contract" [internal quotation marks omitted] ). If we agreed with the defendant's argument, we would have to accept that our legislature and the commissioner intended that rental cars could be simultaneously underinsured, yet not meet the definition of underinsured under most automobile insurance policies, all while being considered self-insured by the rental car company's assets, to which the injured victim would have no recourse. See Martin v. Powers , supra, 505 S.W.3d at 525 n.7, 505 S.W.3d 512. We cannot accept such illogicial results, as "common sense must be used" when examining and applying statutory provisions and regulations. (Internal quotation marks omitted.) Connelly v. Commissioner of Correction , 258 Conn. 394, 407, 780 A.2d 903 (2001).[6] **683 Enterprise is simply not a self-insurer as to the negligence of its lessees, rendering § 14-129 (a), the self-insurer eligibility statute, inapplicable in this context. Accordingly, the rental car was not owned by a self-insurer, and, therefore, the plaintiffs are not precluded from underinsured motorist benefits under their policies.
IV
The defendant nevertheless argues that legislative and administrative acquiescence dictates that the legislature intended not to disturb the self-insurer exclusion despite the opportunity and ability to do so after the Graves Amendment took effect in 2005. It is true that there have been amendments to § 38a-336 after the enactment of the Graves Amendment and that the legislature has not taken action to address the self-insurer exclusion. In another case in which we discussed the public policy behind uninsured motorist coverage, however, we were "unpersuaded that legislative inaction invariably warrants recognition as a reliable indicator of legislative intent." Streitweiser v. Middlesex Mutual Assurance Co. , supra, 219 Conn. at 379, 593 A.2d 498. Particularly in a case where, as here, the divergent relationships between state and federal statutes, regulations, and public policies are complex and nuanced, we decline to assume tacit acceptance by the legislature.
Taking into account the Graves Amendment, the uninsured and underinsured motorist statutes, related state regulations, and underlying public policy, we therefore conclude that rental car companies may not be deemed self-insurers as to the negligence of their lessees. Accordingly, Enterprise was not self-insured as to the present risk, and the application of the underinsured motorist exclusions in the plaintiffs' policies would contravene the public policy articulated in **684 *111 § 38a-336 (a) (1) (A).[7] The trial court therefore improperly granted the defendant's motions for summary judgment on the ground that Enterprise's vehicle was excluded from underinsured motorist coverage pursuant to the plaintiffs' policies.
The judgment of the trial court is reversed and the case is remanded to that court with direction to deny the defendant's motions for summary judgment and for further proceedings.
In this opinion the other justices concurred.

Orkney interpreted § 38a-334-6 of the 1999 revision of the Regulations of Connecticut State Agencies, which excluded only "uninsured motor vehicle[s]" owned by self-insurers. In response to a claim in that case that the regulation did not permit the exclusion of underinsured motor vehicles, this court stated that "the statutes and regulations applicable to uninsured motorist coverage also apply to underinsured motorist coverage.... [T]herefore ... § 38a-334-6 (c) (2) (B) [of the 1999 revision of the Regulations of Connecticut State Agencies] authorizes the exclusion of vehicles owned by self-insurers from the scope of the underinsured motorist coverage provided by an automobile liability insurance policy." (Citations omitted.) Orkney v. Hanover Ins. Co. , supra, 248 Conn. at 202, 727 A.2d 700. Subsequently, § 38a-334-6 of the 1999 revision of the Regulations of Connecticut State Agencies was amended in 2000 to refer to "uninsured or underinsured motor vehicle[s]," which is the current language of the regulation. 62 Conn. L.J., No. 12, p. 6C (September 19, 2000) (final regulation); see also 61 Conn. L.J., No. 23, pp. 5B-6B (December 7, 1999) (proposed regulation). For purposes of simplicity, in this opinion we refer and cite to the current version of the regulation.

In 2017, the General Assembly increased the minimum coverage amounts to $25,000 per person and $50,000 per occurrence, effective January 1, 2018. General Statutes (Supp. 2018) § 14-112 (a).

We note there is an inconsistency in the record about the factual circumstances surrounding this settlement. The plaintiffs' brief states that the settlement was with Huffman and Wasilesky for the total limits of Wasilesky's policy: $20,000 per person and $40,000 per occurrence. The plaintiffs' amended complaints allege that they settled with only Huffman's insurer for the full amount of his coverage. Meanwhile, the trial court's memorandum of decision appears to indicate that the plaintiffs received the full amount of coverage from Wasilesky's policy. Nothing about the terms of this settlement affects our disposition of these appeals. Upon remand, if material to any dispute, the trial court can sort out the amount and source of available coverage.

Patrick Tannone was also insured for underinsured motorist conversion coverage, which means that any underinsured motorist benefits he is entitled to from the defendant will not be reduced by the amount recovered from the legally responsible parties. Although Patrick Tannone's conversion coverage, and Sandra Tannone's lack thereof, may make a difference in their potential recovery if they prevail in the trial court on remand, it does not affect our present analysis, and we therefore will not address it in this opinion.

We note that we are not overruling Orkney . Rather, because the Graves Amendment has preempted state law, the rationale in Orkney perforce has limited applicability. Orkney still applies, however, to other types of underinsured motorist claims where the self-insurer exclusion is unaffected by the Graves Amendment, such as when a plaintiff alleges direct negligence or criminal wrongdoing on the part of a self-insured owner or when the self-insured owner is not a rental car company. See 49 U.S.C. § 30106 (a) (2012).

Although Enterprise is not a self-insurer as to the risk in the present case, we do not conclude, as the defendant suggests, that Enterprise and other rental car companies are altogether not self-insurers. Enterprise would be a self-insurer when there is a claim of direct liability-as opposed to vicarious liability-brought against it. For example, in cases of "negligence or criminal wrongdoing," self-insurance still applies to rental car companies because those claims are exempt from the Graves Amendment. 49 U.S.C. § 30106 (a) (2) (2012).

The defendant asserts that by reaching this conclusion we are usurping the legislature's authority to either amend or repeal our statutory framework in light of the Graves Amendment, or the commissioner's authority to determine who may be a self-insurer under the state regulations. To the contrary, we are neither legislating from the bench nor striking down the regulation. Rather, we are appropriately undertaking the judicial responsibility of vindicating our legislature's public policy, articulated in state statute, to which both a regulation and a contract must give way when they are in conflict with that statute.